UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Idalia Valcarcel, individually and on behalf of all others similarly situated, | 1:21-cv-07821 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Ahold U.S.A., Inc., | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Ahold U.S.A., Inc. ("defendant") manufactures, labels, markets, and sells cinnamon flavored crackers purporting to be made predominantly with whole grain graham flour under its Stop and Shop brand ("Product").



**I.     REPRESENTATIONS OF WHOLE GRAIN GRAHAM FLOUR**

2.     The Product's complete name is read as "Naturally Flavored Cinnamon Graham Crackers," pictured on the front label, with images of dark hued crackers, and a seal promising a "100% Quality & Trust Guarantee."

3.     "GRAHAM" is the biggest word on the front label and written in all capital letters.

4.     The Product's name, and the emphasis on the word "Graham," gives reasonable consumers the impression that graham flour – a type of whole grain flour – is the primary and predominant flour ingredient used.

5.     Dictionaries confirm what reasonable consumers expect when it comes to a "graham cracker," defining it as "a slightly sweet cracker made of whole wheat flour" and "a semisweet cracker, usually rectangular in shape, made chiefly of whole-wheat flour."[1]

6.     This whole grain content distinguishes a graham cracker from other crackers and cookies made with mostly enriched flour, also referred to "white flour" or "refined flour."

7.     In whole grain flour, all three parts of the grain are used as opposed to enriched flour, which only uses the endosperm.

8.     Because the "Graham" in "Graham Crackers" admittedly refers to whole grain flour, reasonable consumers expect a food identified by such a name to have more whole grain flour than if it was merely labeled, "Crackers."

9.     However, the ingredient list reveals "Enriched Wheat Flour" is the predominant flour, indicated by its listing ahead of "Graham Flour (Whole Grain Wheat Flour)."

---

[1] https://www.dictionary.com/browse/graham-cracker

2

**Ingredients**
Enriched Wheat Flour (Wheat Flour, Niacin, Reduced Iron, Thiamin Mononitrate, Riboflavin, Folic Acid), Graham Flour (Whole Grain Wheat Flour), Sugar, High Oleic Canola And/or Soybean Oil With TBHQ And Citric Acid To Preserve Freshness, Contains 2% Or Less Of: Molasses, Honey, Leavening (Baking Soda, Calcium Phosphate), Salt, Dextrose, Cinnamon, Soy Lecithin, Natural Cinnamon Flavor, Sodium Sulfite.

**Ingredients:** ==Enriched Wheat Flour== (Wheat Flour, Niacin, Reduced Iron, Thiamin Mononitrate, Riboflavin, Folic Acid), ==Graham Flour (Whole Grain Wheat Flour)==, Sugar, High Oleic Canola And/or Soybean Oil With TBHQ And Citric Acid to Preserve Freshness, Contains 2% Or Less Of: Molasses, Honey, Leavening (Baking Soda, Calcium Phosphate), Salt, Dextrose, Cinnamon, Soy Lecithin, Natural Cinnamon Flavor, Sodium Sulfite.

## II.     REASONS CONSUMERS VALUE WHOLE GRAINS

10.     Surveys have confirmed that consumers increasingly seek products made with whole grains because they contain more fiber than refined white flour.[2]

11.     Specifically, these findings indicate that:

- At least half of consumers expect that for every gram of whole grain per serving, there will be at least a gram of fiber;

- Two-thirds of consumers (67%) agree that whole grain foods are high in fiber;

- Identifying a product with the name of a whole grain flour is equivalent to a

---

[2] FDA-2006-D-0298-0016, Exhibit 1a - "A Survey of Consumers Whole Grain & Fiber Consumption Behaviors, and the Perception of Whole Grain Foods as a Source of Dietary Fiber" - [Kellogg Company - Comment] (July 1, 2010); Docket ID: FDA-2006-D-0298, Guidance for Industry and FDA Staff: Whole Grains Label Statements.

3

representation that the product will predominantly be made with whole grains; and

- 75% of consumers who observe claims that a product is made with, or contains whole grain flour, will expect the food to be at least a good source of fiber.

12. The 2015 Dietary Guidelines for Americans recommended that at least half of the grains in a healthy diet should be whole grains.[3]

13. The FDA cautioned manufacturers against misleading consumers as to whole grain content of foods:[4]

> 7. Question: Does the term "whole grain" mean the same as "100 percent whole grain"? If a product is labeled as "whole wheat bagel" or "whole wheat pizza," how much whole wheat should it contain? What is graham flour?
>
> Answer: FDA has not defined any claims concerning the grain content of foods. However, the agency has established standards of identity for various types of cereal flours and related products in 21 CFR Part 137, including a standard of identity for "whole wheat flour" (§ 137.200) and "whole durum flour" (§ 137.225). Graham flour is an alternative name for whole wheat flour (§ 137.200).
>
> Depending on the context in which a "whole grain" statement appears on the label, it could be construed as meaning that the product is "100 percent whole grain." We recommend that products labeled with "100 percent whole grain" not contain grain ingredients other than those the agency considers to be whole grains.

14. The FDA has warned companies against making misleading whole grain representations in a product name – "HiHo Deluxe WHOLE WHEAT Crackers" and "Krispy

---

[3] U.S. DEP'T OF AGRIC. AND U.S. DEP'T OF HEALTH & HUMAN SERVS., *Dietary Guidelines for Americans 2015–2020* (8th ed. 2015), *available at* http://goo.gl/qnyfLi (click "A Closer Look Inside Healthy Eating Patterns" under "Chapter 1. Key Elements of Healthy Eating Patterns").
[4] Draft Guidance for Industry and FDA Staff: Whole Grains Label Statements," Docket No. 2006D-0066, ("Whole Grain Guidance").

WHOLE WHEAT Saltine Crackers" – where the products were predominantly white flour.[5]

15. The Federal Trade Commission ("FTC") recognized that "[M]any reasonable consumers will likely understand 'whole grain' [claims] to mean that all, or virtually all, of the food product is whole grain, or that all of the grain ingredients in the product are whole grains.[6]

16. By highlighting the Product's whole grain ingredient, "GRAHAM," as part of the product name, larger than everything else on the label, Defendant is highlighting the presence of nutrients associated with whole grains – fiber.[7]

17. Plaintiff and consumers expect a product represented with such "whole grain" claims to provide at least 10 percent ("good source") of the Reference Daily Intake ("RDI") or the Daily Reference Value ("DRV") of fiber.[8]

18. The amount of whole grain wheat flour in the Product is approximately twenty-five percent of the amount of refined flour.

19. This is based on the Nutrition Facts, which reveals the Product is not a good source of fiber, as it indicates only one gram of fiber (4%) per serving.

---

[5] CSPI Petition to Prohibit Misbranding of Whole Wheat Products and to Promulgate Food Labeling Regulations Concerning Products Made with Whole Wheat, Docket No. 93P-0227 (Jun. 25, 1993).
[6] In the Matter of Draft Guidance for Industry and FDA Staff: Whole Grains Label Statements, Docket No. 2006-0066 Comments of the Staff of the Bureau of Consumer Protection, the Bureau of Economics, and the Office of Policy Planning of the Federal Trade Commission April 18, 2006
[7] 21 U.S.C. § 343(r)(1); 21 C.F.R. § 101.65.
[8] 21 C.F.R. § 101.54(b)-(c).

| Nutrition Facts | |
|---|---|
| 13 servings per container | |
| Serving Size | 2.0 each |
| **Amount per serving** | |
| **Calories** | **130** |
| | % Daily Value* |
| **Total Fat** 4g | 4% |
|    Saturated Fat 0.5g | 3% |
|    *Trans* Fat 0g | |
| **Cholesterol** 0mg | 0% |
| **Sodium** 115mg | 5% |
| **Total Carbohydrate** 24g | 9% |
|    Dietary Fiber 1g | 5% |
|    Total Sugars 8g | |
|       Includes 8g Added Sugars | 16% |
| **Protein** 2g | |

### III. THE SMALL AMOUNT OF MOLASSES AND HONEY DARKENS THE PRODUCT'S COLOR

20. Consumers associate darker hues in grain products with a significant amount of whole grain ingredients.

21. Though the Product contains honey and molasses purportedly for their sweetening effect, the honey imparts a darker color.

22. The Product's color would be significantly lighter if based solely on the ratio of refined white flour to whole grain graham flour.

23. According to expert W.K. Nip, the presence of "mostly reducing sugars in its sugar profile" causes molasses and "honey [to] brown[s] easily during baking, adding a natural dark

color to baked products such as bread, crackers, and other products.[9]

24. The use of a small amount of honey and molasses contributes to consumers getting the misleading impression the Product contains more whole grain graham flour than it does.

IV. **DEFENDANT'S REPRESENTATIONS MISLEAD CONSUMERS**

25. The Food, Drug, and Cosmetic Act ("FDCA") provides that a food is misbranded if "its labeling is false or misleading in any particular." 21 U.S.C. § 343(a)(1).

26. Product names can be misleading when they suggest one or more, but not all, of the key ingredients, like whole grain graham flour, yet fail to disclose other more predominant ingredients like refined flour.

> The labeling of a food which contains two or more ingredients may be misleading by reason (among other reasons) of the designation of such food in such labeling by a name which includes or suggests the name of one or more but not all such ingredients, even though the names of all such ingredients are stated elsewhere in the labeling.

21 C.F.R. § 101.18(b).

27. Federal and state regulations require that a product's name disclose the percentage of whole grain graham flour because this is a characterizing ingredient. 21 C.F.R. § 102.5(b).

28. Whole grain graham flour is a characterizing ingredient because its proportion has a material bearing on price and consumer acceptance of the Product.

29. Whole grain graham flour is also a characterizing ingredient because the labeling creates an erroneous impression than it is present in amounts greater than it is.

30. Crackers that have graham flour as their predominant flour exist in the marketplace and are not technologically or otherwise unfeasible to produce.

---

[9] W.K. Nip et al., eds. *Bakery products: science and technology*, Ch. 7, "Sweeteners," John Wiley & Sons, 2006.





## V.    CONCLUSION

31. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of the Product, relative to itself and other comparable products or alternatives.

32. The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

33. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

34. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

35. The Product is sold for a price premium compared to other similar products, no less than $2.99 per 14.4 oz box a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

## Jurisdiction and Venue

36. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

37. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

38. Plaintiff Idalia Valcarcel is a citizen of New York.

39. Defendant Ahold U.S.A., Inc. is a Maryland corporation with a principal place of business in Landover, Prince Georges County, Maryland.

40. Plaintiff and defendant are citizens of different states.

41. Venue is in this district because plaintiff resides in this district and the actions giving rise to the claims occurred within this district.

42. Venue is in this division because plaintiff resides in Bronx County, which is where the events giving rise to the present claims occurred.

## Parties

43. Plaintiff Idalia Valcarcel is a citizen of Bronx, Bronx County, New York.

44. Defendant Ahold U.S.A., Inc., is a Maryland corporation with a principal place of business in Landover, Maryland, Prince Georges County.

45. Defendant is a United States subsidiary of the Dutch supermarket conglomerate Koninklijke Ahold Delhaize N.V., commonly known as Ahold Delhaize.

46. Within the U.S., Defendant operates the Stop and Shop chain of supermarkets in the

northeastern United States.

47. Defendant operates over 400 Stop and Shop locations in states including New York, New Jersey, Massachusetts, and Connecticut.

48. Stop and Shop also sells its products through its website and Peapod.com, its grocery delivery service.

49. Plaintiff bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, at defendant's physical or online store, 961 E 174th St Bronx NY 10460-5060, between January 2021 and February 2021, among other times.

50. Plaintiff bought the Product because she expected it would contain a predominant amount of whole grain graham flour.

51. Plaintiff did not expect the Product to contain a significant percent less of whole grain graham flour.

52. Plaintiff knew that Defendant was a supermarket with an established reputation for quality, as promised through the front label seal, which would live up to its word on the Product's composition.

53. Plaintiff bought the Product at or exceeding the above-referenced price.

54. Plaintiff relied on the representations identified here.

55. Plaintiff would not have purchased the Product if she knew the representations were false and misleading.

56. Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the statements and claims made by Defendant.

57. The Product was worth less than what Plaintiff paid and she would not have paid as

much absent Defendant's false and misleading statements and omissions.

58.     Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations are consistent with its composition.

### Class Allegations

59.     Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged.

60.     Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

61.     Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

62.     Plaintiff is an adequate representative because her interests do not conflict with other members.

63.     No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

64.     Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

65.     Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

66.     Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350

(Consumer Protection Statute)

67.     Plaintiff incorporates by reference all preceding paragraphs.

68.     Plaintiff and class members desired to purchase a product that contained a predominant amount of whole grain flour relative to enriched flour.

69.     Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

70.     Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

71.     Plaintiff relied on the representations.

72.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

73.     The Product was manufactured, labeled, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it contained a predominant amount of whole grain flour relative to enriched flour.

74.     Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

75.     This duty is based on Defendant's outsized role in the market for this type of Product.

76.     Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

77.     Defendant received notice and should have been aware of these issues due to

complaints by regulators, competitors, and consumers, to its main offices.

78. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

79. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Negligent Misrepresentation

80. Defendant had a duty to truthfully represent the Product, which it breached.

81. This duty is based on defendant's position, holding itself out as having special knowledge and experience this area, as custodians and owners of the Stop and Shop Supermarket brand, known for high quality foods for over a hundred years.

82. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a nationally recognized and trusted brand.

83. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

84. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

85. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained a predominant amount of whole grain flour relative to enriched flour

86. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

## Unjust Enrichment

87. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   September 18, 2021

Respectfully submitted,

Sheehan & Associates, P.C.

/s/Spencer Sheehan
                                                                  60 Cuttermill Rd Ste 409
                                                                  Great Neck NY 11021
                                                                  Tel: (516) 268-7080
                                                                  spencer@spencersheehan.com