# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Idalia Valcarcel, individually and on behalf of
all others similarly situated,

        Plaintiff,

    vs.

Ahold U.S.A., Inc.,

        Defendant.

1:21-cv-07821-JSR

**ORAL ARGUMENT SCHEDULED FOR
12/20/2021 AT 3:00PM**

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COMPLAINT

FAEGRE DRINKER BIDDLE & REATH LLP

Sarah L. Brew (admitted *pro hac vice*)
Tyler A. Young (*pro hac vice* application
forthcoming)
Rory F. Collins (NY Bar No. 5549670)
Emily R. Zambrana (admitted *pro hac vice*)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Telephone: (612) 766-7000
Fax: (612) 766-1600
sarah.brew@faegredrinker.com
tyler.young@faegredrinker.com
rory.collins@faegredrinker.com
emily.zambrana@faegredrinker.com

*Attorneys for Defendant Ahold U.S.A., Inc.*

Date: November 11, 2021

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 2

LEGAL STANDARD .................................................................................................... 4

ARGUMENT ............................................................................................................... 4

I.     Valcarcel's Claims Are Expressly Preempted by Federal Law. ............................. 4

       A.     The FDCA expressly preempts all state laws to the extent they
              establish any requirement for food labeling that is not identical to
              federal law. .......................................................................................... 5

       B.     "Graham Crackers" is the Product's "common, usual name"
              required by FDA regulation. ................................................................. 5

       C.     Valcarcel fails to plausibly allege that the Product violates other
              FDA regulations. .................................................................................. 7

II.    The Product Label Is Not Materially Misleading to Reasonable
       Consumers. ..................................................................................................... 9

       A.     Reasonable consumers understand that "graham crackers"
              indicates the type of food being sold. ................................................. 10

       B.     The Product label makes clear that graham flour is not the primary
              flour. ..................................................................................................... 13

              1.     The Product contains whole grain graham flour. ......................... 13

              2.     The Product makes no claims about the quantity or
                     predominance of graham flour. ................................................... 13

              3.     A reasonable consumer would read the ingredient list. .............. 15

III.   Plaintiff Fails to Plausibly Allege that She Paid a Price Premium. ..................... 17

IV.    Valcarcel's Common-Law Claims Fail as a Matter of Law for Additional
       Reasons. ......................................................................................................... 18

       A.     Valcarcel's negligent misrepresentation claims fails for lack of a
              "special relationship" with Defendant. ................................................. 19

       B.     Valcarcel's warranty claims fail for multiple reasons. ............................ 20

              1.     Valcarcel did not provide the required pre-suit notice. ................. 20

2.      Valcarcel does not allege that the Product is unfit for consumption.................................................................. 21

3.      Valcarcel's Magnuson-Moss Warranty Act ("MMWA") claim fails for multiple reasons....................................... 21

C.      Valcarcel's fraud claim fails because she does not allege facts giving rise to a strong inference of fraudulent intent. .............................. 22

D.      The unjust enrichment claim fails as duplicative...................................... 23

V.      Valcarcel Lacks Standing to Seek Injunctive Relief............................................. 23

VI.     Valcarcel's Complaint Should Be Dismissed with Prejudice............................... 25

CONCLUSION.................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ackerman v. Coca-Cola Co.*,
  2010 WL 2925955 (E.D.N.Y. July 21, 2010) .................................................................8

*Amadei v. Nielsen*,
  348 F. Supp. 3d 145 (E.D.N.Y. 2018) .........................................................................4

*Ang v. Whitewave Foods Co.*,
  2013 WL 6492353 (N.D. Cal. Dec. 10, 2013) ...............................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................4

*Bassaw v. United Indus. Corp.*,
  2020 WL 5117916 (S.D.N.Y. Aug. 31, 2020) .............................................................20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................4

*Berni v. Barilla S.p.A.*,
  964 F.3d 141 (2d Cir. 2020) ......................................................................................24

*Borenkoff v. Buffalo Wild Wings, Inc.*,
  2018 WL 502680 (S.D.N.Y. Jan. 19, 2018) ...............................................................18

*Boswell v. Bimbo Bakeries USA, Inc.*,
  2021 WL 5144552 (Nov. 4, 2021) .........................................................................1, 17

*Bowling v. Johnson & Johnson*,
  65 F. Supp. 3d 371 (S.D.N.Y. 2014) .........................................................................22

*Broder v. Cablevision Sys. Corp.*,
  418 F.3d 187 (2d Cir. 2005) ........................................................................................7

*Brookdale Univ. Hosp. & Med. Ctr., Inc. v. Health Ins. Plan of Greater N.Y.*,
  2009 WL 928718 (E.D.N.Y. Mar. 31, 2009) ..............................................................22

*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 341 (2001) ....................................................................................................7

*Budhani v. Monster Energy Co.*,
  2021 WL 1104988 (S.D.N.Y. Mar. 22, 2021) .............................................................24

*Campbell v. Whole Foods Market Group, Inc.*,
  516 F. Supp. 3d 370 (S.D.N.Y. 2021)......................................................................12

*Carter v. HealthPort Techs., LLC*,
  822 F.3d 47 (2d Cir. 2016)......................................................................................4

*Chen v. Dunkin' Brands, Inc.*,
  954 F.3d 492 (2d Cir. 2020)...............................................................................10, 13

*Colella v. Atkins Nutritionals, Inc.*,
  348 F. Supp. 3d 120 (E.D.N.Y. 2018) ..............................................................5, 17, 18

*Cosgrove v. Oregon Chai, Inc.*,
  2021 WL 706227 (S.D.N.Y. Feb. 21, 2021)............................................................20

*DaCorta v. AM Retail Grp., Inc.*,
  2018 WL 557909 (S.D.N.Y. Jan. 23, 2018) ............................................................18

*Dallas Aerospace, Inc. v. CIS Air Corp.*,
  352 F.3d 775 (2d Cir. 2003)....................................................................................19

*Daniel v. Mondelēz Int'l, Inc.*,
  287 F. Supp. 3d 177 (E.D.N.Y. 2018) ....................................................................10

*Davis v. Hain Celestial Grp., Inc.*,
  297 F. Supp. 3d 327 (E.D.N.Y. 2018) ............................................................... passim

*Elkind v. Revlon Consumer Prods. Corp.*,
  2015 WL 2344134 (E.D.N.Y. May 14, 2015) .........................................................20

*Engram v. GSK Consumer Healthcare Holdings (US) Inc.*,
  2021 WL 4502439 (E.D.N.Y. Sept. 30, 2021) ........................................................15

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013).................................................................................9, 15

*Geffner v. Coca-Cola Co.*,
  928 F.3d 198 ....................................................................................................9, 18

*Gilleo v. J.M. Smucker Co.*,
  2021 WL 4341056 (S.D.N.Y. Sept. 23, 2021)........................................................23

*Gordon v. Hain Celestial Grp., Inc.*,
  2017 WL 213815 (S.D.N.Y. Jan. 18, 2017) ...........................................................20

*Henderson v. Gruma Corp.*,
  2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ........................................................14

*Hidalgo v. Johnson & Johnson Consumer Cos.*,
　148 F. Supp. 3d 285 (S.D.N.Y. 2015)..................................................25

*Ibarrola v. Kind, LLC*,
　83 F. Supp. 3d 751 (N.D. Ill. 2015) ...................................................16

*In re Gen. Motors LLC Ignition Switch Litig.*,
　2016 WL 3920353 (S.D.N.Y. July 15, 2016) ......................................21

*In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*,
　2018 WL 1616053 (C.D. Cal. Mar. 8, 2018) .....................................8, 9

*Izquierdo v. Mondelez Int'l, Inc.*,
　2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ......................................18

*JP Morgan Chase Bank v. Winnick*,
　350 F. Supp. 2d 393 (S.D.N.Y. 2004)..................................................20

*Kennedy v. Mondelez Glob. LLC*,
　2020 WL 4006197 (E.D.N.Y. July 10, 2020) ........................... passim

*Koenig v. Boulder Brands, Inc.*,
　995 F. Supp. 2d 274 (S.D.N.Y. 2014)..................................................23

*Kommer v. Bayer Consumer Health*,
　252 F. Supp. 3d 304 (S.D.N.Y. 2017), *aff'd*, 710 F. App'x 43 (2d Cir. 2018).................24

*La Vigne v. Costco Wholesale Corp.*,
　284 F. Supp. 3d 496 (S.D.N.Y. 2018), *aff'd*, 772 F. App'x 4 (2d Cir. 2019) ...............2, 15

*Lieb v. Am. Motors Corp.*,
　538 F. Supp. 127 (S.D.N.Y. 1982)......................................................22

*Lima v. Post Consumers Brands, LLC*,
　2019 WL 3802885 (D. Mass. Aug. 13, 2019) ........................... passim

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
　797 F.3d 160 (2d Cir. 2015)...............................................................25

*Lujan v. Defs. of Wildlife*,
　504 U.S. 555 (1992)............................................................................23

*Mahoney v. Endo Health Sols., Inc.*,
　2016 WL 3951185 (S.D.N.Y. July 20, 2016) ......................................19

*Mantikas v. Kellogg*,
　910 F.3d 633 (2d Cir. 2018)..............................................14, 15, 16, 17

*Mazella v. Coca-Cola Co.*,
   2021 WL 2940926 (S.D.N.Y. July 12, 2021) ....................................................16

*Mee v. I A Nutrition, Inc.*,
   2015 WL 4776301 (N.D. Cal. Aug. 13, 2015) ....................................................7

*Melendez v. ONE Brands, LLC*,
   2020 WL 1283793 (E.D.N.Y. Mar. 16, 2020) ..................................................25

*Nashville Syrup Co. v. Coca Cola Co.*,
   215 F. 527 (6th Cir. 1914) ............................................................................11

*Newton v. Kraft Heinz Foods Co.*,
   2018 WL 11235517 (E.D.N.Y. Dec. 18, 2018) ................................................22

*Orlander v. Staples, Inc.*,
   802 F.3d 289 (2d Cir. 2015).......................................................................9, 17

*Painter v. Blue Diamond Growers*,
   2017 WL 4766510 (C.D. Cal. May 24, 2017) *aff'd*, 757 F. App'x 517 (9th Cir.
   2018) ......................................................................................................6, 11

*Patellos v. Hello Prod., LLC*,
   2021 WL 827769 (S.D.N.Y. Mar. 4, 2021) ....................................................25

*Petrosino v. Stearn's Prod., Inc.*,
   2018 WL 1614349 (S.D.N.Y. Mar. 30, 2018) ................................................20

*Pichardo v. Only What You Need, Inc.*,
   2020 WL 6323775 (S.D.N.Y. Oct. 27, 2020) ..........................................2, 8, 25

*Reyes v. Crystal Farms Distrib. Co.*,
   2019 WL 3409883 (E.D.N.Y. July 26, 2019)....................................15, 16, 17

*Rivas v. Hershey Co.*,
   2020 WL 4287272 (E.D.N.Y. July 27, 2020) ................................................13

*Rooney v. Cumberland Packing Corp.*,
   2012 WL 1512106 (S.D. Cal. Apr. 16, 2012)............................................11, 13

*S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*,
   84 F.3d 629 (2d Cir. 1996)............................................................................22

*Sarr v. BEF Foods, Inc.*,
   2020 WL 729883 (E.D.N.Y. Feb. 13, 2020)....................................19, 20, 23

*Silva v. Smucker Nat. Foods*,
    2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) ................................................................21

*Singleton v. Fifth Generation, Inc.*,
    2016 WL 406295 (N.D.N.Y. Jan. 12, 2016) ........................................................................2

*Steele v. Wegmans Food Markets, Inc.*,
    472 F. Supp. 3d 47 (S.D.N.Y. 2020) ................................................................12, 13, 15

*Tomasino v. Estee Lauder Cos.*,
    44 F. Supp. 3d 251 (E.D.N.Y. 2014) ................................................................................20

*Twohig v. Shop-Rite Supermarkets, Inc.*,
    2021 WL 518021 (S.D.N.Y. Feb. 11, 2021) ....................................................................19

*Videtto v. Kellogg USA*,
    2009 WL 1439086 (E.D. Cal. May 21, 2009) ................................................................11

*Wallace v. Wise Foods, Inc.*,
    2021 WL 3163599 (S.D.N.Y. July 26, 2021) ....................................................................7

*Weisblum v. Prophase Labs, Inc.*,
    88 F. Supp. 3d 283 (S.D.N.Y. 2015) ................................................................................20

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
    127 F. Supp. 3d 156 (S.D.N.Y. 2015) ................................................................................6

*Werbel v. Pepsico, Inc.*,
    2010 WL 2673860 (N.D. Cal. July 2, 2010) ....................................................................11

*Winston v. Hershey Co.*,
    2020 WL 8025385 (E.D.N.Y. Oct. 26, 2020) ............................................................15, 17

*Workman v. Plum*,
    141 F. Supp. 3d 1032 (N.D. Cal. 2015) ....................................................................14, 16

*Wynn v. Topco Associates*,
    2021 WL 168541 (S.D.N.Y. Jan. 19, 2021) ............................................................14, 15

**STATE CASES**

*Corsello v. Verizon N.Y., Inc.*,
    967 N.E.2d 1177 (N.Y. 2012) ........................................................................................23

*Kimmell v. Schaefer*,
    675 N.E.2d 450 (N.Y. 1996) ..........................................................................................19

*Vamos v. Coca-Cola Bottling Co. of N.Y.*,
   627 N.Y.S.2d 265 (Civ. Ct. 1995) ........................................................21

**FEDERAL STATUTES**

15 U.S.C. § 2301(6)(A) .............................................................................21, 22

15 U.S.C. § 2310(d)(1) ....................................................................................21

15 U.S.C. § 2310(d)(3) ....................................................................................22

21 U.S.C. § 337(a) .............................................................................................7

21 U.S.C. § 343-1(a)(3) ...............................................................................5, 9

21 U.S.C. § 343(b) .............................................................................................7

Food, Drug, Cosmetic Act ......................................................................4, 5, 7

Magnuson-Moss Warranty Act ............................................................4, 20, 21, 22

**STATE STATUTES**

N.Y. U.C.C. Law § 2-607(3)(a) .....................................................................20

New York General Business Law §§ 349, 350 ...........................3, 9, 10, 17, 18

**RULES**

Fed. R. Civ. P. 12(b)(1) ....................................................................................4

Fed. R. Civ.P. 12(b)(6) .....................................................................................2

Fed. R. Civ. P. 15(a)(2) ..................................................................................25

**REGULATIONS**

21 C.F.R. § 100.1(c)(4) .....................................................................................5

21 C.F.R. § 101.3(a) ..........................................................................................5

21 C.F.R. §§ 101.3(b)(2) ...................................................................................5

21 C.F.R. § 101.4 ...........................................................................................3, 7

21 C.F.R. § 101.18(b) .....................................................................................7, 8

21 C.F.R. § 102.5(a) ......................................................................................5, 9

21 C.F.R. § 102.5(b) .......................................................................................5, 7, 8, 9

21 C.F.R. § 102.23 ........................................................................................................8

21 C.F.R. § 131.200 .......................................................................................................5

*Common or Usual Names for Nonstandardized Foods*, 38 Fed. Reg. 6964, 6964-65
      (Mar. 14, 1973) .....................................................................................................8

*Certain Misbranding Sections of the FDCA That Are, and That Are Not, Adequately
      Being Implemented by Regulation; Notice of Final Lists*, 58 Fed. Reg. 2470, 2471-
      72 (Jan. 6, 1993) ..................................................................................................7

*Food Labeling*, 60 Fed. Reg. 66206-01, 66210 (Dec. 21, 1995) ..............................................8

**OTHER AUTHORITIES**

Cambridge Dictionary, *Graham Cracker*,
      https://dictionary.cambridge.org/us/dictionary/english/graham-cracker ..........................10

Dictionary.com, https://www.dictionary.com/browse/graham-cracker ..................................10

Merriam-Webster Dictionary, https://www.merriam-
      webster.com/dictionary/graham%20cracker ......................................................................10

Merriam-Webster Dictionary, *Graham Flour*, https://www.merriam-
      webster.com/dictionary/graham%20flour ..........................................................................11

## INTRODUCTION

This case is the latest in a long string of putative consumer protection class actions brought by the same lawyer alleging that the packaging on a retail food item is false and misleading.[1] This case is about cinnamon-flavored Graham Crackers (the "Product") sold by The Stop & Shop Supermarket LLC ("Stop & Shop"), a subsidiary of the defendant Ahold U.S.A., Inc. ("Ahold" or "Defendant"). The Product's packaging correctly identifies the food as "Graham Crackers" and provides all required nutritional information about the Product.

Plaintiff Idalia Valcarcel ("Valcarcel") alleges that it is misleading to call the Product "Graham Crackers" because it contains more enriched flour than whole grain graham flour. Notably, Valcarcel does not dispute that the Product contains graham flour. Instead, she alleges that the Product label implies that graham flour is the primary flour ingredient in the Product. Valcarcel acknowledges that the Product's ingredient list discloses the exact predominance of ingredients. Nonetheless, she claims that she was deceived by the Product's labeling and asserts claims for consumer fraud, negligent misrepresentation, breach of warranty, fraud, and unjust enrichment.

Valcarcel's claims are implausible, unsupported by well-pleaded facts, and fail as a matter of law. As a threshold matter, Valcarcel's claims are preempted because the label statement she claims is misleading is ***mandated*** by the United States Food & Drug Administration ("FDA")'s naming regulations. In addition, all of Valcarcel's claims fail on the merits because she has failed to plausibly allege that the name "Graham Crackers" would materially mislead ***reasonable consumers***. Valcarcel also fails to plead other essential elements of her common-law claims. Finally, if any claim were to survive, Valcarcel lacks standing to pursue injunctive relief because

---

[1] *See Boswell v. Bimbo Bakeries USA, Inc.*, 2021 WL 5144552, at *1 & n.1 (Nov. 4, 2021) (citing cases).

she does not face imminent risk of future injury.

The Court should dismiss Valcarcel's claims with prejudice because any amendment would be futile.

## BACKGROUND

Stop & Shop is a grocery store chain located in the northeastern United States. Stop & Shop is wholly owned by the defendant in this case, Ahold. Stop & Shop sells several varieties of Graham Crackers with different flavors, including cinnamon. Plaintiff challenges ***only*** the cinnamon-flavored Graham Crackers. The Product label, which is pictured in the Complaint, is reproduced below.[2]



---

[2] (*See* Compl., Dkt. 1 at 1, 3, 6). With this motion, Defendant is filing a full and accurate copy of the Graham Crackers label referred to in the Complaint. (*See* Exhibit A to the Declaration of Sarah L. Brew). In deciding a Rule 12(b)(6) motion to dismiss, the court may consider "statements or documents incorporated into the complaint by reference." *La Vigne v. Costco Wholesale Corp.*, 284 F. Supp. 3d 496, 502 (S.D.N.Y. 2018), *aff'd*, 772 F. App'x 4 (2d Cir. 2019). The Complaint incorporates the Graham Crackers label by reference, so the Court may consider the entire label submitted by Defendant. *See Singleton v. Fifth Generation, Inc.*, 2016 WL 406295, at *3 (N.D.N.Y. Jan. 12, 2016).

The ingredient list, which lists the ingredients in descending order of predominance by weight, *see* 21 C.F.R. § 101.4, shows that the Product contains graham flour:

**INGREDIENTS:** ENRICHED WHEAT FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMIN MONONITRATE, RIBOFLAVIN, FOLIC ACID), GRAHAM FLOUR (WHOLE GRAIN WHEAT FLOUR), SUGAR, HIGH OLEIC CANOLA AND/OR SOYBEAN OIL WITH TBHQ AND CITRIC ACID TO PRESERVE FRESHNESS, CONTAINS 2% OR LESS OF: MOLASSES, HONEY, LEAVENING (BAKING SODA, CALCIUM PHOSPHATE), SALT, DEXTROSE, CINNAMON, SOY LECITHIN, NATURAL CINNAMON FLAVOR, SODIUM SULFITE.

(Brew Decl., Ex. A).

Valcarcel alleges that the Product's name "Graham Crackers" is misleading because it gives "consumers the impression that graham flour—a type of whole grain flour—is the primary and predominant flour ingredient used," when it is in fact enriched flour. (Compl. ¶¶ 4, 9). Valcarcel acknowledges, however, that graham flour is the Product's second most abundant ingredient. (*Id.* ¶ 9). Significantly, Valcarcel does ***not*** allege that the label makes any statement about "whole grain" or "graham flour," outside the undisputedly accurate ingredient list.

Valcarcel claims she bought the Product "on one or more occasions" at "defendant's physical or online store" "between January 2021 and February 2021, among other times," because "she expected it would contain a predominant amount of whole grain graham flour." (*Id.* ¶¶ 49-50). Valcarcel alleges she "would not have purchased" the Product if she had known the "truth" about its contents. (*Id.* ¶¶ 34, 55.)

Valcarcel's Complaint asserts causes of action for violation of New York General Business Law ("GBL") Sections 349 and 350, negligent misrepresentation, breach of express warranty,

breach of implied warranty of merchantability, violation of the Magnuson-Moss Warranty Act, fraud, and unjust enrichment. Valcarcel also asserts a claim for injunctive relief. Each claim fails as a matter of law.

## LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief . . . requires the reviewing court to draw on its judicial experience and ***common sense***." *Id.* at 679 (emphasis added).

When a plaintiff lacks standing to assert a claim, the claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1). *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 154 (E.D.N.Y. 2018). "At the pleading stage, Plaintiffs have the burden of 'alleg[ing] facts that affirmatively and plausibly suggest that [they] have standing to sue.'" *Id.* (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016)).

## ARGUMENT

### I.   Valcarcel's Claims Are Expressly Preempted by Federal Law.

A threshold, dispositive issue in this case is federal preemption. Valcarcel's claims arise under state law, but the labeling of the Product is governed by the federal Food, Drug and Cosmetic Act ("FDCA"), which expressly preempts any provision of state law that is not identical to federal law. Because federal law requires the labeling statement that Valcarcel challenges, her claims are preempted and fail as a matter of law.

4

### A.  The FDCA expressly preempts all state laws to the extent they establish any requirement for food labeling that is not identical to federal law.

The Product is federally regulated under the FDCA, which is administered by the FDA. To ensure nationwide uniformity in how food is labeled, the FDCA expressly preempts state laws to the extent they differ from federal law, providing that "no State … may directly or indirectly establish … any requirement for the labeling of food … that is not identical to" the FDCA's requirements. 21 U.S.C. § 343-1(a)(3). Under this provision, state consumer-protection laws are preempted whenever they are used to impose requirements that are not imposed by, or differ from those imposed by, the FDCA. *See Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 132-33 (E.D.N.Y. 2018) (citing 21 C.F.R. § 100.1(c)(4)). Thus, when a state-law claim challenges label statements that are required or expressly allowed by FDA regulations, that claim is preempted. *Id.* at 134-37.

### B.  "Graham Crackers" is the Product's "common, usual name" required by FDA regulation.

FDA regulations require that all food labels "bear as one of its principal features a statement of the identity of the commodity." 21 C.F.R. § 101.3(a). For some foods, like yogurt, federal regulations prescribe a "standard of identity." *See* 21 C.F.R. § 131.200. If no federal standard of identity exists, the label must use the food's "common or usual name," which "may be established by common usage." 21 C.F.R. §§ 101.3(b)(2), 102.5(d). Common, usual names are meant to be "uniform among all identical or similar products" and to "accurately identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." 21 C.F.R. § 102.5(a).

FDA regulations do not prescribe a standard of identity for graham crackers, but products like Defendant's Product—a flat, rectangular, perforated, sweet, crunchy cracker—have been sold under the common, usual name "graham crackers" for decades. The term "Graham Crackers"

accurately describes the Product because it is a cracker made with graham flour (as opposed to other crackers that do not contain graham flour) and is the same term used to identify products with similar shape, texture, and composition. The United States Department of Agriculture (USDA)'s Commercial Item Description for graham crackers, for example, requires graham crackers to contain graham flour and sugar—but does not require any particular amount or proportion of those ingredients—and allows additional, optional ingredients like cinnamon, honey, molasses, and "other ingredients appropriate for graham crackers."[3]

The Product name "Graham Crackers" thus not only complies with but is **mandated by** FDA regulations requiring products to be identified by their common, usual name. Valcarcel's attempt to require a different statement of identity is therefore preempted. *See Painter v. Blue Diamond Growers*, 2017 WL 4766510, at *2 (C.D. Cal. May 24, 2017) *aff'd*, 757 F. App'x 517 (9th Cir. 2018) (claim against statement of identity "Almond Milk" preempted); *Ang v. Whitewave Foods Co.*, 2013 WL 6492353, at *4 (N.D. Cal. Dec. 10, 2013) (same for "almond milk," "soy milk," and "coconut milk").

---

[3] Brew Decl., Ex. B, U.S. Dep't of Agric., *Commercial Item Description: Crackers* at 5, https://www.ams.usda.gov/sites/default/files/media/CID%20Crackers.pdf (last visited Nov. 10, 2021). USDA's Commercial Item Descriptions are product descriptions that "describe the most important characteristics of a commercial product" and that various government purchasers may use in determining which food products to purchase for institutional programs like the school lunch program, the military, and other government facilities. Brew Decl., Ex. C, U.S. Dep't of Agric., *Commercial Item Descriptions Fact Sheet*, https://www.ams.usda.gov/sites/default/files/media/FactSheet_CIDS.pdf (last visited Nov. 10, 2021). The court may take judicial notice of these documents because they are available on USDA's official government website. *See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015).

## C.  Valcarcel fails to plausibly allege that the Product violates other FDA regulations.

In an attempt to avoid preemption, Valcarcel alleges that the Product name "Graham Crackers" violates other FDA regulations regarding misbranding and product naming: 21 C.F.R. § 101.18(b) and §102.5(b). Neither argument is correct.[4]

The first regulation Valcarcel cites provides that the name of a food with multiple ingredients "*may* be misleading" by including "the name of one or more but not all" of its ingredients. 21 C.F.R. § 101.18(b) (emphasis added). The purpose of this regulation is to implement 21 U.S.C. § 343(b)'s prohibition on selling food under the name of another, different food. *Certain Misbranding Sections of the FDCA That Are, and That Are Not, Adequately Being Implemented by Regulation; Notice of Final Lists*, 58 Fed. Reg. 2470, 2471-72 (Jan. 6, 1993). A food name that "offers some indication of a product's contents is not, however, necessarily required to list out every ingredient." *Lima v. Post Consumers Brands, LLC*, 2019 WL 3802885, at *6 (D. Mass. Aug. 13, 2019); *see also Mee v. I A Nutrition, Inc.*, 2015 WL 4776301, at *5 (N.D. Cal. Aug. 13, 2015) ("Super Quad Protein" was not required to refer to amino acids).

Valcarcel appears to contend that the name "Graham Crackers" must also refer to enriched flour (*see* Compl. ¶ 26), but this reasoning would apply to *every ingredient*, including sugar, canola oil, salt, and baking soda. If this approach were adopted, a food name could never refer to less than all of the food's ingredients, a function already served by the mandatory ingredient list. *See* 21

---

[4] Even if Valcarcel plausibly alleged a regulatory violation, it is black-letter law that she can neither bring a claim for private enforcement of FDA regulations, nor indirectly enforce the FDCA through New York's consumer protection laws. *See* 21 U.S.C. § 337(a); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001) ("it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance" with FDA regulations); *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199 (2d Cir. 2005) (holding that Section 349 could not be used to circumvent the lack of a private right of action for violation of a federal law). Moreover, "packaging is not rendered materially misleading … by virtue of its noncompliance with FDA regulations." *Wallace v. Wise Foods, Inc.*, 2021 WL 3163599, at *3 (S.D.N.Y. July 26, 2021).

C.F.R. § 101.4. That is not what 21 C.F.R. § 101.18(b) requires. Instead, courts find a plausible violation of this naming regulation **only** when a product name implies that it contains one or two ingredients **to the exclusion** of all other ingredients. For example, in *Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, at *5, *13 (E.D.N.Y. July 21, 2010), the name "vitaminwater" plausibly violated § 101.18(b) because other statements on the labeling and advertising falsely implied that the product contained **only** vitamins and water, such as "vitamins + water = what's in your hand." Valcarcel does not allege she believed the Product contained **only** graham flour, or that it contained no enriched flour, nor would such an allegation be plausible. Valcarcel cannot circumvent preemption by relying on 21 C.F.R. § 101.18(b).

The second regulation Valcarcel cites applies only when the type of food at issue includes a characterizing ingredient whose proportion in the product has a "material bearing on price or consumer acceptance," and the failure to disclose the percentage of the ingredient would mislead consumers about the basic nature of the food. 21 C.F.R. § 102.5(b); *Food Labeling*, 60 Fed. Reg. 66206-01, 66210 (Dec. 21, 1995) (explaining that § 102.5 requires a percentage declaration of a characterizing ingredient only "when it has a material bearing on the **nature of the product**") (emphasis added). For example, if a peanut spread is made of more than 10% nonpeanut ingredients, it must be labeled "[ ]% peanut spread." 21 C.F.R. § 102.23.

But § 102.5(b) is not meant to apply to "all ingredients for all foods," or even to "primary ingredients for all foods." *Common or Usual Names for Nonstandardized Foods*, 38 Fed. Reg. 6964, 6964-65 (Mar. 14, 1973) (noting, for example, that "the amount of flour in bread would not be regarded as sufficiently important to require percentage labeling"). And it does not apply when the common, usual name **already** "accurately identifies or describes, in as simple and direct terms as possible, the basic nature of the food." *In re Quaker Oats Maple & Brown Sugar Instant*

*Oatmeal Litig.*, 2018 WL 1616053, at *4 (C.D. Cal. Mar. 8, 2018) (quoting 21 C.F.R. § 102.5(a)).

Here, the basic nature of this Product is "Graham Crackers," and Valcarcel does not allege otherwise. Valcarcel therefore cannot circumvent preemption by relying on 21 C.F.R. § 102.5(b). *Cf. In re Quaker Oats*, 2018 WL 1616053, at *4 (concluding that the basic nature of the food was oatmeal, not maple syrup).

*** 

In sum, the common name "Graham Crackers" is mandated by FDA regulations requiring foods to provide a statement of identity. Valcarcel's claims are therefore expressly preempted by 21 U.S.C. § 343-1(a)(3) and must be dismissed.

## II.     The Product Label Is Not Materially Misleading to Reasonable Consumers.

Even if Valcarcel's claims were not preempted, they fail on the merits. Each of Valcarcel's claims requires "materially misleading" statements or conduct. *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (elements of New York GBL §§ 349-450 claim); *Geffner v. Coca-Cola Co.*, 928 F.3d 198, 199 & n.1, n.7 (2d Cir. 2019) (affirming dismissal of GBL §§ 349-350, negligent misrepresentation, fraud, and warranty claims for failure to plausibly allege misleading statements). Under New York law, the "materially misleading" standard requires proof that the "allegedly deceptive advertisements were likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). It is "well settled" that a court may determine an allegedly deceptive label is not misleading "as a matter of law." *Id.*

All of Valcarcel's claims fail because she has not plausibly alleged that reasonable consumers would be deceived by the Product's name "Graham Crackers." Another New York federal court has already dismissed similar "graham" claims for failure to state a plausible claim. *See Kennedy v. Mondelez Glob. LLC*, 2020 WL 4006197 (E.D.N.Y. July 10, 2020). The Court

should follow *Kennedy* and dismiss Valcarcel's claims.

### A. Reasonable consumers understand that "graham crackers" indicates the type of food being sold.

Valcarcel alleges that the Product name "Graham Crackers" misleads consumers into thinking that the Product is "made predominantly with whole grain graham flour." (Compl. ¶¶ 1, 4). These allegations run counter to decades of consumer exposure to and familiarity with graham cracker products. *See Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 193 (E.D.N.Y. 2018) ("A reasonable consumer does not lack common sense.").

Reasonable consumers do not understand "graham crackers" to mean that a specific type of flour is predominant in the food. Rather, consumers understand "graham crackers" to be the "slightly sweet, darker-colored, rectangular, and perforated cracker" "used in desserts like s'mores." *Kennedy*, 2020 WL 4006197, at *9, 11 (holding that using the term "graham cracker" "does not necessarily constitute a representation about the quantum of graham flour in the product"). Dictionary definitions bear this out.[5]

Valcarcel's claim rests on the assumption that reasonable consumers understand the word "graham" in "graham crackers" to mean "whole grain graham flour." (*See* Compl. at 2, ¶¶ 4, 8, 26,

---

[5]     *See, e.g.*, Cambridge Dictionary, *Graham Cracker*, https://dictionary.cambridge.org/us/dictionary/english/graham-cracker ("a flat, thin, hard, rectangular or square cookie, usually flavored with honey or cinnamon"). The Court may take judicial notice of dictionary definitions. *See Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 501 (2d Cir. 2020) (consulting dictionary definition of "steak" in assessing GBL claim).

The dictionary definitions that Valcarcel cites in the Complaint actually support this point. Valcarcel quotes the Merriam-Webster definition of "graham cracker" as "a slightly sweet cracker made of whole wheat flour," and the Dictionary.com definition as "a semisweet cracker, usually rectangular in shape, made chiefly of whole-wheat flour." Compl. ¶ 5 (quoting Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/graham%20cracker & Dictionary.com, https://www.dictionary.com/browse/graham-cracker). As in *Kennedy*, the Product meets the Merriam-Webster definition because it indisputably contains whole wheat graham flour. 2020 WL 4006197, at *10. Moreover, the variation among the definitions, with the majority defining "graham cracker" without any reference to the amount of graham flour, shows that the Product's use of the term "is necessarily not misleading or deceptive." *Id.*

27-29, 50-51, 68). This assumption is wrong.[6] Reasonable consumers do not equate "graham crackers" with "graham flour," just as they do not associate soda water with soda, butternut squash with butter, or cream of tartar with cream. *See Nashville Syrup Co. v. Coca Cola Co.*, 215 F. 527, 532 (6th Cir. 1914). Over a century ago, the Sixth Circuit recognized that the product name "Coca Cola" was not deceptive in using the names of two ingredients that are present but not predominant in the product, because "it is impossible to say" that those ingredients (coca leaves and cola nuts) did "not have appreciable effect" upon the product. *Id.* at 531, 533. Other courts have similarly rejected hyper-literal interpretations of food names that ignore years of common usage and common sense. *See, e.g.*, *Lima*, 2019 WL 3802885, at *9 (implausible that "Honey Bunches of Oats" cereal would mislead reasonable consumer into believing that the cereal was primarily or exclusively sweetened with honey); *Painter*, 2017 WL 4766510, at *2 (implausible that reasonable consumer would think "almond milk" contained cow's milk); *Rooney v. Cumberland Packing Corp.*, 2012 WL 1512106, at *4 (S.D. Cal. Apr. 16, 2012) ("Sugar in the Raw" product did not plausibly imply that sugar was unprocessed or unrefined); *Werbel v. Pepsico, Inc.*, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (implausible to believe that "Cap'n Crunch's Crunch Berries" contained berries); *Videtto v. Kellogg USA*, 2009 WL 1439086, at *3 (E.D. Cal. May 21, 2009) (no reasonable consumer would believe "Froot Loops" contained real fruit).

The reality is that "the word 'graham' when included in the … phrase 'graham crackers' does not connote graham flour." *Kennedy*, 2020 WL 4006197, at *9. If it were otherwise, Valcarcel

---

[6] The word "graham" in both "graham crackers" and "graham flour" comes from the 1800s-era inventor of the early version of the cracker, Sylvester Graham. *See* Merriam-Webster Dictionary, *Graham Flour*, https://www.merriam-webster.com/dictionary/graham%20flour (referring to "Sylvester Graham, 1851 Am. Dietary reformer"). Most consumers today know neither who Sylvester Graham is, nor what "graham flour" is, but they know what "graham crackers" are: sweet, dark, rectangular, perforated crackers used in desserts like s'mores.

would not need to repeatedly refer to "graham flour" and "whole grain flour" as opposed to simply "graham" in her complaint. (*See, e.g.*, Compl. ¶¶ 1, 22, 24, 26-29, 50-51 (repeatedly referring to "whole grain graham flour")). The *Kennedy* court rejected this exact claim because a reasonable consumer does not "associate 'graham' as meaning 'graham flour,' and as a result assume that graham flour is either the predominant ingredient in the product or that graham flour predominates over other types of flour." 2020 WL 4006197, at *9.[7]

Valcarcel's interpretation of "graham crackers" as meaning "a predominant amount of whole grain graham flour" (Compl. ¶ 50) is especially unreasonable as applied to Defendant's Product, because the Product packaging ***nowhere*** mentions "graham flour" or "whole grain" (other than the undisputedly accurate ingredient list). Valcarcel's allegations about "whole grain" claims (*see* Compl. ¶¶ 10-15, 17)[8] are therefore irrelevant. *See Kennedy*, 2020 WL 4006197, at *11. It is unreasonable to assume, based solely on the food name "graham crackers," that the food is predominantly made of whole grains. *See Steele v. Wegmans Food Markets, Inc.*, 472 F. Supp. 3d 47, 50 (S.D.N.Y. 2020) (rejecting claim that "Vanilla Ice Cream" implied the product was flavored

---

[7] A recent case to the contrary, *Campbell v. Whole Foods Market Group, Inc.*, 516 F. Supp. 3d 370 (S.D.N.Y. 2021), is plainly distinguishable on its facts. In *Campbell*, the court emphasized that its decision was "a fact-specific analysis based on the packaging at issue in this case." *Id.* at 385 n.7. Specifically, the court explained that the "decisions in the graphic design of the packaging make a difference in the Court's analysis," specifically the graphic equivalence of the words "Honey" and "Graham," and their position above the much smaller, subordinate word "Crackers." *Id.* at 378-79. The packaging here is substantially different from that in *Campbell*. As Valcarcel herself alleges, the full product description is "Cinnamon Naturally Flavored Graham Crackers." (*See* Compl. ¶¶ 1, 2). All five words are in the same color, with only slight variations in size and style. The packaging plainly conveys that the product is "Graham Crackers," and the flavor is "Cinnamon." These differences in the product packaging render *Campbell* inapposite.

[8] Valcarcel incorrectly alleges that "surveys have confirmed" that "identifying a product with the name of a whole grain flour is equivalent to a representation that the product will be predominantly made with whole grain." In fact, the survey she cites nowhere mentions whole grain flour, much less graham flour. (*See* Compl. ¶¶ 10-11 & n. 2 (citing *A Survey of Consumers' Whole Grain & Fiber Consumption Behaviors*, attached as Exhibit D to the Brew Declaration)).

with vanilla beans, when the container nowhere mentioned vanilla beans); *Rivas v. Hershey Co.*, 2020 WL 4287272, at *5 (E.D.N.Y. July 27, 2020) (rejecting claim that "Kit Kat White" candy bar implied it was made with white chocolate, when the packaging made no reference to chocolate); *Rooney*, 2012 WL 1512106, at *4 (rejecting claim that "Sugar in the Raw" implied the sugar was unprocessed or unrefined because "nowhere on the box do the words 'unprocessed' or 'unrefined' appear").

### B. The Product label makes clear that graham flour is not the primary flour.

Even if a consumer unreasonably assumed that "graham crackers" referred to graham flour, a reasonable consumer would not be misled by the Product's packaging because: (1) the Product truly contains graham flour, (2) the Product nowhere claims that graham flour is the primary flour, and (3) the ingredient list accurately discloses the predominance of all ingredients.

#### 1. The Product contains whole grain graham flour.

No reasonable consumer would be deceived by the words "Graham Crackers" because the Product ***contains*** graham flour. This is undisputed. (Compl. ¶ 9). This case is thus distinguishable from cases involving a product "entirely devoid of a food or ingredient that is part of its name." *Lima*, 2019 WL 3802885, at *7; *see also Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 501 (2d Cir. 2020) (district court "did not err in basing dismissal, in part, on the undisputed fact that the Products do in fact contain 'Angus beef'"); *Steele*, 472 F. Supp. 3d at 50 (dismissing claim that "Vanilla" misled consumers when the plaintiff "conceded that there is vanilla in the product").

#### 2. The Product makes no claims about the quantity or predominance of graham flour.

Valcarcel's complaint is not that the Product does ***not*** contain graham flour, but rather that it does not contain ***enough*** graham flour. (Compl. ¶¶ 8, 50-51). But no reasonable consumer would be deceived about the quantity or predominance of graham flour because the packaging makes no

claims about the quantity or predominance of its ingredients (outside the unchallenged ingredient list). Thus, this is not a case "where the packaging misled consumers by inaccurately suggesting a particular amount of a key ingredient." *See Lima*, 2019 WL 3802885, at *7.

The term "Graham Crackers" in isolation does not lead reasonable consumers to assume that the product contains more graham flour than non-graham flour. *See Kennedy*, 2020 WL 4006197, at *10. This conclusion is consistent with the principle that a label that "does not claim a specific amount" of an ingredient, but rather "speaks to [the] presence" of an ingredient, cannot mislead a reasonable consumer about the quantity or prominence of that ingredient in the product. *Henderson v. Gruma Corp.*, 2011 WL 1362188, at *12 (C.D. Cal. Apr. 11, 2011); *see also Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 337 (E.D.N.Y. 2018) ("A reasonable consumer acting reasonably under the circumstances would not understand the front label to be listing the ingredients from most to least predominant."); *Workman v. Plum*, 141 F. Supp. 3d 1032, 1033-36 (N.D. Cal. 2015) (dismissing claim that products advertised with images of pumpkin, pomegranate, quinoa, and yogurt were deceiving because those were not the most prominent ingredients).

The Second Circuit's holding in *Mantikas v. Kellogg*, 910 F.3d 633 (2d Cir. 2018), is not applicable here for this very reason. In *Mantikas*, a box of Cheez-Its stated "Whole Grain" and "Made with Whole Grain," even though the product was made with predominantly white flour, just like its "Original" version. *Id.* at 634-35. Here, the Product makes no such affirmative statement; the packaging nowhere says "Whole Grain," "Made with Whole Grain," or "Made with Graham Flour." The packaging simply states "Graham Crackers," a phrase that makes no implication "about the quantum of graham flour in the product." *Kennedy*, 2020 WL 4006197, at *11; *see also Wynn v. Topco Associates*, 2021 WL 168541, at *4 (S.D.N.Y. Jan. 19, 2021)

14

(distinguishing *Mantikas* where product simply stated "vanilla" and not "made with vanilla extract"). *Mantikas* expressly distinguished cases like this one, where the plaintiff alleged "that a product label was deceptive because it led consumers to believe, incorrectly, the product contained a significant quantity of a particular ingredient." 910 F.3d at 637-38. That is precisely what Valcarcel alleges here. (*See* Compl. ¶ 50 ("Plaintiff bought the Product because she expected it would contain a predominant amount of whole grain graham flour.")). Multiple courts have distinguished *Mantikas* for these same reasons. *Kennedy*, 2020 WL 4006197, at *13; *Wynn*, 2021 WL 168541, at *4; *Winston v. Hershey Co.*, 2020 WL 8025385, at *4 (E.D.N.Y. Oct. 26, 2020); *Steele*, 472 F. Supp. 3d at 50. The Court should do the same here.

### 3.   A reasonable consumer would read the ingredient list.

Finally, no reasonable consumer would conclude that graham flour was the Product's primary flour ingredient when the ingredient list expressly showed the opposite (*i.e.*, enriched flour is listed first, followed by graham flour). (*See* Compl. ¶ 9; Brew Decl., Ex. A.) "[C]ontext is crucial in determining whether a reasonable consumer would have been misled by a particular element of a product's packaging." *La Vigne v. Costco Wholesale Corp.*, 284 F. Supp. 496, 513 (S.D.N.Y. 2018), *aff'd*, 772 F. App'x 4 (2d Cir. 2019); *see also Engram v. GSK Consumer Healthcare Holdings (US) Inc.*, 2021 WL 4502439, at *4 (E.D.N.Y. Sept. 30, 2021) ("The Second Circuit, post-*Mantikas*, continues to consider context in determining whether a reasonable consumer would have been misled." (internal quotation omitted)). "[T]he presence of a disclaimer or other similar clarifying language may defeat a claim of deception." *Fink*, 714 F.3d at 742. For example, "[i]f a plaintiff alleges that an element of a product's label is misleading, but another portion of the label would dispel the confusion . . . the clarification can defeat the claim." *Reyes v. Crystal Farms Distrib. Co.*, 2019 WL 3409883, at *3 (E.D.N.Y. July 26, 2019); *see also Engram*, 2021 WL 4502439, at *3 ("when the front of the package is better characterized as ambiguous than

misleading, courts looking at the alleged misrepresentations in their full context … are more likely to grant a motion to dismiss").

"Consumers are accustomed to seeing a product's ingredients listed by weight under the nutrition facts." *Davis*, 297 F. Supp. 3d at 337. Valcarcel herself is clearly familiar with ingredient lists, as her factual allegations about the amount of graham flour in the Product are drawn from its ingredient list. (Compl. ¶ 9). Although Valcarcel claims she was misled by the Product's label, she is now relying on that very label to attempt to state a claim. (*See* Compl. ¶¶ 9, 55). This contradiction alone warrants dismissal. *See Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 759 (N.D. Ill. 2015) (citing cases).

In any event, **reasonable** consumers would not think graham flour was the Product's predominant flour when the side panel identifies—"in exactly the spot consumers are trained to look"—the ingredients by order of predominance. *Davis*, 297 F. Supp. 3d at 337; *see also Workman*, 141 F. Supp. 3d at 1035 ("[A]ny potential ambiguity could be resolved by the back panel of the products, which listed all ingredients in order of predominance, as required by the FDA."); *Mazella v. Coca-Cola Co.*, 2021 WL 2940926, at *3 (S.D.N.Y. July 12, 2021) ("Because the Product discloses the number of calories and amount of sugar on the label, a reasonable consumer would not assume the definition of 'Slightly Sweet' is "low sugar" or "low calories.").

Multiple courts have dismissed challenges to literally true front-of-pack statements, such as ingredients the product **truly contains**, when the product's back panel detailed its contents, because in that situation the ingredient list "contains more detailed information about the product that *confirms* other representations on the packaging." *See Mantikas*, 910 F.3d at 637 (internal quotation omitted); *see also Reyes*, 2019 WL 3409883, at *3 (dismissing claim against potatoes labeled "made with real butter" that also contained margarine); *Lima*, 2019 WL 3802885, at *7

16

(dismissing claim against Honey Bunches of Oats because ingredient list showed it contained sugar and honey); *Davis*, 297 F. Supp. 3d at 336-37 (dismissing claim when ingredient list clarified "that the premium ingredients are not the most predominant"); *Boswell*, 2021 WL 5144552, at *3 (dismissing claim against product name "All Butter Cake Loaf" when ingredient list showed non-butter ingredients like soybean oil). While *Mantikas* held that an accurate ingredient list will not a defeat a claim against "misleading information set forth in large bold type on the front of the box," that rule does not apply here because the front panel ***did not*** contain misleading information in the first place. 910 F.3d at 637; *Winston*, 2020 WL 8025385, at *4.

Because Defendant's Product did not make an affirmative misrepresentation on its front panel, the ingredient list "sufficiently dispel[s]" any possible confusion about the predominance of graham flour. *Reyes*, 2019 WL 3409883, at *3. "Thus, "[n]o reasonable consumer could have been misled in light of this clarifying language." *Davis*, 297 F. Supp. 3d at 337.

                                        ***

In sum, Valcarcel's Complaint fails to plausibly allege that the Product made materially misleading statements, and the Court should dismiss the Complaint for failure to state a claim.

## III.    Plaintiff Fails to Plausibly Allege that She Paid a Price Premium.

Valcarcel also has not sufficiently alleged that she "suffered injury" as a result of the Product label, which is a required element of her GBL claim. *Orlander*, 802 F.3d at 300. This is an additional, independent reason to dismiss the GBL claim.

To plead injury under the GBL, "a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Id.* at 302. An overpayment—or so-called price premium—caused by the allegedly deceptive practice can satisfy the injury requirement. *Colella*, 348 F. Supp. 3d at 143. But merely invoking the term "price premium" is insufficient; a plaintiff must allege facts demonstrating that she

overpaid—and, therefore, did not receive the full value of her purchase—on account of the deceptive practice. *See id.* (holding that plaintiff's "conclusory allegations" of a price premium failed to adequately plead injury under the GBL); *Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016) (same); *Borenkoff v. Buffalo Wild Wings, Inc.*, 2018 WL 502680, at *4 (S.D.N.Y. Jan. 19, 2018) (same); *DaCorta v. AM Retail Grp., Inc.*, 2018 WL 557909, at *7-8 (S.D.N.Y. Jan. 23, 2018) (same).

Here, Valcarcel has not alleged *any* facts to support her conclusory allegations of a price premium. She alleges that the Product's price "is sold for a price premium compared to other similar products," (Compl. ¶ 35), but she does not give examples of these other similar products, let alone allege the prices they sell for. *See Colella*, 348 F. Supp. 3d at 143 (noting that plaintiff did not allege the amount of the price premium or the prices of non-premium products). Valcarcel also alleges that she would not have paid as much for the Product had she known the "truth" about it (Compl. ¶ 34), but this by itself is insufficient to allege an injury, *see DaCorta*, 2018 WL 557909, at *7-8, and Valcarcel's subjective willingness to pay is not an indicator of the objective economic value of the Products, *see Borenkoff*, 2018 WL 502680, at *4.

Because Valcarcel has not plausibly alleged that she paid a price premium due to the Product name "Graham Crackers," she has not pleaded an injury cognizable under the GBL.

## IV.    Valcarcel's Common-Law Claims Fail as a Matter of Law for Additional Reasons.

As explained above, each of Valcarcel's remaining claims—negligent misrepresentation, breach of warranty, fraud, and unjust enrichment—fail because Valcarcel has not plausibly alleged any materially misleading statements. *See Geffner*, 928 F.3d at 199 & n.7.  These claims also fail for other, independent reasons.

### A. Valcarcel's negligent misrepresentation claims fails for lack of a "special relationship" with Defendant.

To recover for negligent misrepresentation in the commercial context, there must be "a special relationship of trust or confidence … between the parties." *Kimmell v. Schaefer*, 675 N.E.2d 450, 454 (N.Y. 1996). Not "all representations made by a seller of goods … give rise to a duty to speak with care." *Id.* The plaintiff must show that there was "a closer degree of trust between the parties than that of the ordinary buyer and seller." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003).

Valcarcel does not allege that she had a special relationship with Ahold. She merely alleges that she bought the Product "on one or more occasions," and that Ahold owns "the Stop and Shop Supermarket brand, known for high quality foods for over a hundred years." (Compl. ¶¶ 49, 81). Courts have repeatedly held that similar allegations do not establish a special relationship. *See Twohig v. Shop-Rite Supermarkets, Inc.,* 2021 WL 518021, at *8 (S.D.N.Y. Feb. 11, 2021) (no special relationship between consumer and supermarket chain that sold organic soymilk); *Sarr v. BEF Foods, Inc.*, 2020 WL 729883, at *6-7 (E.D.N.Y. Feb. 13, 2020) (defendant's alleged status as a "trusted brand" "does not give rise to a duty to impart correct information").

Valcarcel also alleges that Ahold held "itself out as having special knowledge and experience [in] this area" (Compl. ¶ 81), but this allegation cannot give rise to a negligent misrepresentation claim, either, for four reasons. First, Valcarcel fails to specify in what subject area Ahold supposedly held itself out as having "special knowledge and experience." Second, "[e]xpertise alone cannot create a special relationship when 'the relationship between the parties is too attenuated.'" *Mahoney v. Endo Health Sols., Inc.*, 2016 WL 3951185, at *4 (S.D.N.Y. July 20, 2016) (citation omitted). Third, even if special knowledge or expertise could make up for the absence of a special relationship, the defendant would need more than mere "knowledge of the

particulars of [its] business." *JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 402 (S.D.N.Y. 2004). That is, at best, all Valcarcel has alleged here—namely, that Ahold owns "the Stop and Supermarket brand, known for high quality foods." (Compl. ¶ 81). Fourth, the basis for Valcarcel's claims—that the Product's primary flour ingredient is not graham flour—is "public information, plainly available on the [Product]'s ingredient label." *Sarr*, 2020 WL 729883, at *6. This is not unique or specialized knowledge. Valcarcel's negligent misrepresentation claim should be dismissed.[9]

### B. Valcarcel's warranty claims fail for multiple reasons.

#### 1. Valcarcel did not provide the required pre-suit notice.

Before bringing a warranty claim, a plaintiff "must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach *or be barred from any remedy*." N.Y. U.C.C. Law § 2-607(3)(a) (emphasis added). Failure to provide this pre-suit notice is grounds for dismissing each of the warranty claims asserted here. *See Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 260-61 (E.D.N.Y. 2014) (express and implied warranty claims); *Bassaw v. United Indus. Corp.*, 2020 WL 5117916, at *4 (S.D.N.Y. Aug. 31, 2020) (MMWA claim).

Valcarcel alleges she "provided *or will provide* notice to defendant, its agents, representatives, retailers and their employees." (Compl. ¶ 76) (emphasis added). That is not enough. *Cosgrove v. Oregon Chai, Inc.*, 2021 WL 706227, at * 15 n.11 (S.D.N.Y. Feb. 21, 2021) (finding this exact allegation insufficient). "Proper factual allegations should, at least, include the date and method by which Plaintiff afforded such notice to Defendant." *Petrosino v. Stearn's*

---

[9] Because Valcarcel has not adequately alleged a "special relationship," her claims are also barred under the economic-loss doctrine. *See, e.g.*, *Elkind v. Revlon Consumer Prods. Corp.*, 2015 WL 2344134, at *12 (E.D.N.Y. May 14, 2015); *Gordon v. Hain Celestial Grp., Inc.*, 2017 WL 213815, at *6-7 (S.D.N.Y. Jan. 18, 2017); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015).

*Prod., Inc.*, 2018 WL 1614349, at *8 (S.D.N.Y. Mar. 30, 2018). Valcarcel's Complaint does

neither. It does not specify when or how Valcarcel gave such notice, if at all, nor does it explain

what type of notice was given, if any.

### 2.   Valcarcel does not allege that the Product is unfit for consumption.

The implied warranty of merchantability is not a guarantee that "the product will fulfill a

'buyer's every expectation.'" *Silva v. Smucker Nat. Foods*, 2015 WL 5360022, at *11 (E.D.N.Y.

Sept. 14, 2015) (citation omitted). Instead, a food product is unmerchantable only if it is unfit for

human consumption. *See id.* Here, Valcarcel does not claim that the Product is unsafe or unfit to

eat. Rather, she alleges that it "did not conform to its affirmations of fact and promises," because

it did not contain "a predominant amount of whole grain flour." (Compl. ¶¶ 73, 78). These

allegations are a far cry from the types of cases where courts have found that a product is unfit for

consumption, such as where consumers found a nail in a cake, or a mouse, insect, or AA batteries

in a bottle of Coke. *See Vamos v. Coca-Cola Bottling Co. of N.Y.*, 627 N.Y.S.2d 265, 268-69 (Civ.

Ct. 1995) (collecting cases). Valcarcel's implied warranty claim should be dismissed.

### 3.   Valcarcel's Magnuson-Moss Warranty Act ("MMWA") claim fails for multiple reasons.

If Valcarcel's express and implied warranty claims are dismissed, her MMWA claim also

must be dismissed because it is derivative of state-law warranty claims. *See In re Gen. Motors*

*LLC Ignition Switch Litig.*, 2016 WL 3920353, at *18 (S.D.N.Y. July 15, 2016). But even if the

state-law warranty claims survive, the MMWA claim fails for two additional, independent reasons.

First, the challenged statements are not written warranties under the MMWA. The MMWA

requires breach of a "written warranty," 15 U.S.C. § 2310(d)(1), which the statute narrowly defines

as written promises or affirmations that the consumer product "is defect free or will meet a

specified level of performance over a specified period of time." 15 U.S.C. § 2301(6)(A). Most

product labels "do not fall within the ambit of the MMWA" because they are "[m]ere product descriptions." *Newton v. Kraft Heinz Foods Co.*, 2018 WL 11235517, at *6 (E.D.N.Y. Dec. 18, 2018) ("natural"); *Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 378 (S.D.N.Y. 2014) ("Restores Enamel"). The same is true of the statement challenged here: "Graham Crackers." This statement does not promise that the Product is "defect free," nor that the Product will "meet a specified level of performance over a specified period of time." 15 U.S.C. § 2301(6)(A). The statement is therefore not a written warranty under the MMWA.

Second, Valcarcel fails to meet the statute's jurisdictional requirements. A consumer may not bring a MMWA claim as a class action in federal court unless there at least 100 named plaintiffs. 15 U.S.C. § 2310(d)(3). Valcarcel is the only named plaintiff here, so she cannot bring a class claim for violation of the MMWA in this court. *See Lieb v. Am. Motors Corp.*, 538 F. Supp. 127, 132 (S.D.N.Y. 1982). She also cannot bring an individual MMWA claim, because she does not allege that the amount of controversy for her personal claim is at least $50,000. *See* 15 U.S.C. § 2310(d)(3).

### C.  Valcarcel's fraud claim fails because she does not allege facts giving rise to a strong inference of fraudulent intent.

To state a claim for fraud, a plaintiff must "allege facts that give rise to a strong inference of fraudulent intent." *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 634 (2d Cir. 1996). The plaintiff can do this by "show[ing] that defendants had both motive and opportunity to commit fraud, or by … alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* Valcarcel has not satisfied either standard. Valcarcel offers no motive for Ahold to defraud its consumers, other than receiving "additional profits" from its sale of the Products. (Compl. ¶ 33). But courts have "consistently rejected" "a generalized profit motive" "as a basis for inferring fraudulent intent." *Brookdale Univ. Hosp. & Med. Ctr., Inc. v.*

*Health Ins. Plan of Greater N.Y.*, 2009 WL 928718, at *6 (E.D.N.Y. Mar. 31, 2009); *see also Sarr*, 2020 WL 729883, at *9. Valcercal also alleges that Ahold's "fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations." (Compl. ¶ 86). This is a conclusory allegation devoid of any factual basis from which the court could conclude Defendant was actually aware the Product label was (allegedly) misleading. *See Gilleo v. J.M. Smucker Co.*, 2021 WL 4341056, at *9 (S.D.N.Y. Sept. 23, 2021) (rejecting a nearly identical allegation). In any event, "[t]he simple knowledge that a statement is false is not sufficient to establish fraudulent intent." *Davis*, 297 F. Supp. 3d at 337. Thus, Valcarcel's fraud claim must be dismissed for failure to plead fraudulent intent.

### D. The unjust enrichment claim fails as duplicative.

Finally, Valcarcel's unjust enrichment claim should be dismissed as duplicative because it relies on the same factual allegations as her other claims. Under New York law, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012).

Valcarcel's unjust enrichment claim is duplicative of her other claims because it is based on the same underlying conduct—allegedly misleading labeling. (*See* Compl. ¶ 87). In such circumstances, courts routinely dismiss the unjust enrichment claims as duplicative. *See Davis*, 297 F. Supp. 3d at 338; *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290-91 (S.D.N.Y. 2014). The Court should reach the same result here.

## V. Valcarcel Lacks Standing to Seek Injunctive Relief.

If any of Valcarcel's claims survive, her request for injunctive relief must still be dismissed because she lacks Article III standing to seek this remedy. To have standing to seek injunctive relief, a plaintiff must face a threatened injury that is "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted).

The Second Circuit recently held that past purchasers of consumer products "are not likely to encounter future harm of the kind that makes injunctive relief appropriate" for two reasons. *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020). First, they "are not bound to purchase a product again," and second, even if they do purchase it again, they will not be harmed "anew" because they will be purchasing "with exactly the level of information that they claim they were owed from the beginning." *Id.* at 147-48. The Second Circuit rejected cases suggesting that past purchasers can seek injunctive relief despite knowledge of the deceptive practice, holding that courts cannot create an "equitable exception" to Article III requirements. *Id.* at 148.

Here, Valcarcel does not face a real or immediate threat of future harm because, according to the Complaint, she now knows the supposed "truth" about the Product's graham flour content. (*See* Compl. ¶ 34). She is therefore at no risk of being harmed by the Product's labeling again because she now has "exactly the level of information" that she claims she was "owed from the beginning." *Berni*, 964 F.3d at 148; *see also Budhani v. Monster Energy Co.*, 2021 WL 1104988, at *13 (S.D.N.Y. Mar. 22, 2021) (past purchaser "obviously now is on notice of what he claims to be the misrepresentations"); *Davis*, 297 F. Supp. 3d at 339 (similar). This conclusion is reinforced by Valcarcel's allegation that she "would not have bought the Product or would have paid less for it" if she had "known the truth" about the Product. (Compl. ¶ 34.) In making this allegation, Valcarcel "essentially concedes that [s]he will not buy the [Product], or be misled by Defendants' marketing, again in the future." *Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 309 (S.D.N.Y. 2017), *aff'd*, 710 F. App'x 43 (2d Cir. 2018).

Valcarcel claims that she "will purchase the Product again when she can do so with the assurance that Product's representations are consistent with its composition." (Compl. ¶ 58). Such an allegation cannot establish standing for injunctive relief, because "[a] plaintiff who merely

alleges that she would purchase a product if it is re-engineered or re-marketed does not show a real or immediate threat of future injury." *Patellos v. Hello Prod., LLC*, 2021 WL 827769, at *11 (S.D.N.Y. Mar. 4, 2021). Indeed, there is no risk of injury because Valcarcel has no intention of purchasing "the current allegedly misleading labelling." *Kennedy*, 2020 WL 4006197, at *5.

## VI.    Valcarcel's Complaint Should Be Dismissed with Prejudice.

Finally, dismissal with prejudice is warranted here. While leave should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), "leave may be denied where amendment would be futile." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). Here, any amendment would be futile, because Valcarcel's claims are preempted by federal law, she has failed to identify any misleading or deceptive statements, and she "cannot offer additional substantive information to cure the deficient pleading." *Hidalgo v. Johnson & Johnson Consumer Cos.*, 148 F. Supp. 3d 285, 294 (S.D.N.Y. 2015). Dismissal should therefore be with prejudice because the flaws in Valcarcel's complaint are "fundamental" and cannot be corrected. *Pichardo v. Only What You Need, Inc.*, 2020 WL 6323775, at *6 (S.D.N.Y. Oct. 27, 2020); *see also Melendez v. ONE Brands, LLC*, 2020 WL 1283793, at *9 (E.D.N.Y. Mar. 16, 2020) (dismissing with prejudice where preemption made amendment of some claims futile and the "failure to plead materially misleading conduct" as to other claims "could not be cured by granting leave to amend.")

### CONCLUSION

Ahold respectfully requests that the Court dismiss the Complaint with prejudice.

Dated:  November 11, 2021

_s/ Sarah L. Brew_

FAEGRE DRINKER BIDDLE & REATH LLP
Sarah L. Brew (admitted _pro hac vice_)
Tyler A. Young (_pro hac vice application_
_forthcoming_)
Rory F. Collins (NY Bar No. 5549670)
Emily R. Zambrana (admitted _pro hac vice_)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Telephone: (612) 766-7000
Fax: (612) 766-1600
sarah.brew@faegredrinker.com
tyler.young@faegredrinker.com
rory.collins@faegredrinker.com
emily.zambrana@faegredrinker.com

_Attorneys for Defendant Ahold U.S.A., Inc._