## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Idalia Valcarcel, individually and on behalf of
all others similarly situated,

                      Plaintiff,

        - against -

Ahold U.S.A., Inc.,

                   Defendant

1:21-cv-07821-JSR

Plaintiff's Memorandum of Law in Opposition to
Defendant's Motion to Dismiss the Complaint

# Table of Contents

TABLE OF AUTHORITIES ................................................................................. iv

INTRODUCTION ............................................................................................... 1

FACTUAL BACKGROUND ............................................................................... 1

LEGAL STANDARDS ........................................................................................ 2

ARGUMENT ....................................................................................................... 3

I.      PLAINTIFF PLAUSIBLY ALLEGED DECEPTION ................................. 3

     A.    Expecting "Graham Crackers" to Have a Connection to Graham Flour is Not "Hyper-Literal" ...................................................... 4

     B.    *Mantikas* Does Not Require that Plaintiff Review the Ingredient List .................. 5

II.     PLAINTIFF'S  ALLEGATIONS ARE NOT PREEMPTED ........................... 7

     A.    The Product's "Common or Usual Name" is Not "Uniform Among All Identical or Similar Products" .................................................. 8

     B.    Plaintiff's Allegations are not Based on Federal Regulations ................................ 9

III.    PLAINTIFF'S PRICE PREMIUM CLAIM IS SUFFICIENT TO SHOW AN INJURY UNDER THE GBL .............................................................. 9

IV.    COMMON LAW CLAIMS ARE SUFFICIENTLY PLED ........................... 11

     A.    The Complaint Exceeds Particularity Requirements for Fraud ........................... 11

     B.    Plaintiff's Warranty Claims are Sufficient ........................................................ 11

         1.    Defendant's Argument Based on Lack of Pre-Suit Notice Fails ................. 12

         2.    That the Product Could Not Pass in Trade as Made Predominantly from Whole Grains Supports Implied Warranty Claim .................................. 12

         3.    The MMWA Applies because "Graham[s]" is a Written Warranty About the Whole Grain Content ................................ 13

     C.    The Parties' Special Relationship Supports Negligent Misrepresentation Claim ............................................................. 14

     D.    Unjust Enrichment is Permitted because a Party Can Plead in the Alternative .................................................................. 15

V.      PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF ................................ 16

CONCLUSION ........................................................................................................................ 17

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................................ 2

*Belfiore v. Procter & Gamble Co.,*
    94 F. Supp. 3d 440 (E.D.N.Y. 2015) .................................................................. 20

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................................ 2

*Berni v. Barilla S.p.A., et al. v. Schulman,*
    964 F.3d 141 (2d Cir. 2020) .............................................................................. 20

*Bourbia v. SC Johnson & Son, Inc.,*
    375 F. Supp. 3d 454 (S.D.N.Y. 2019) ............................................................... 17

*Broder v. Cablevision Sys. Corp.,*
    418 F.3d 187 (2d Cir. 2005) .............................................................................. 10

*Campbell v. Whole Foods Market Group, Inc.,* 516 F. Supp. 3d 370, 383
    (S.D.N.Y. 2021) .................................................................................................. 6

*Colella v. Atkins Nutritionals, Inc.,*
    348 F. Supp. 3d 120 (E.D.N.Y. 2018) ........................................................ 11, 12

*Corsello v. Verizon N.Y., Inc.,*
    967 N.E.2d 1177 (N.Y. 2012) .......................................................................... 19

*Daniel v. Mondelez Int'l, Inc.,*
    287 F. Supp. 3d 177 (E.D.N.Y. 2018) .............................................................. 12

*Duran v. Henkel of America, Inc.,*
    450 F. Supp. 3d 337 (S.D.N.Y. 2020) ................................................................ 4

*Eidelman v. Sun Prod. Corp.,*
    No. 16-cv-3914 (NSR), 2017 WL 4277187 (S.D.N.Y. Sept. 25, 2017) .............. 8

*Fischer v. Mead Johnson Labs.,*
    41 A.D.2d 737 (2d Dep't 1973) ........................................................................ 15

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
    528 U.S. 167 (2000) .......................................................................................... 20

*Galper v. JP Morgan Chase Bank, N.A.,*
    802 F.3d 437 (2d Cir. 2015) ................................................................................ 2

iv

*Gant v. Wallingford Bd. of Educ.*,
  69 F.3d 669 (2d Cir. 1995)......................................................................................... 3

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*,
  8 F. Supp. 3d 467 (S.D.N.Y. 2014) ........................................................................ 12

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
  317 F.R.D. 374 (S.D.N.Y. 2016) ............................................................................ 21

*Hanley v. Chicago Title Ins. Co.*,
  No. 12-cv-4418 (ER), 2013 WL 3192174 (S.D.N.Y. June 24, 2013) ...................... 3

*Henry v. Daytop Vill., Inc.*,
  42 F.3d 89 (2d Cir.1994)......................................................................................... 19

*Hishon v. King*,
  467 U.S. 69 (1984).................................................................................................... 3

*In re Bayer Corp. Combination Aspirin Prods. Mktg. and Sales Practices Litig.*,
  701 F. Supp. 2d 356 (E.D.N.Y. 2010) .................................................................... 11

*In re DDAVP Indirect Purchaser Antitrust Lit.*,
  903 F. Supp. 2d 198 (S.D.N.Y. 2012)..................................................................... 11

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
  No. 12-md-2413, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ............................. 8

*In re: Gen. Motors LLC Ignition Switch Litig.*,
  14-md-2543 (JMF), 2016 WL 3920353 (S.D.N.Y. July 15, 2016) ........................ 16

*Izquierdo v. Mondelez International Inc.*,
  No. 16-cv-04697, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016)............................ 11

*Jackson v. Eddy's LI RV Ctr., Inc.*,
  845 F. Supp. 2d 523 (E.D.N.Y. 2012) .................................................................... 15

*Karlin v. IVF Am., Inc.*,
  93 N.Y.2d 282 (1999) ............................................................................................... 4

*Kimmell v. Schaefer*,
  89 N.Y.2d 257, 675 N.E.2d 450 (1996)................................................................. 18

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015)................................................................................... 13

*Mahoney v. Endo Health Sols.*, Inc.,
  15-cv-9841 (DLC), 2016 WL 3951185 (S.D.N.Y. July 20, 2016)......................... 18

*Mandarin Trading Ltd. v. Wildenstein*,
    16 N.Y.3d 173 (2011) ........................................................................................ 18

*Mantikas v. Kellogg Co.*,
    910 F.3d 633 (2d Cir. 2018)................................................................................. 8

*McKinnis v. Kellogg USA*,
    No. 07-cv-2611, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) ........................... 5

*Neri v. R.J. Reynolds Tobacco Co.*,
    No. 98-cv-371, 2000 WL 33911224 (N.D.N.Y. Sept.28, 2000)........................... 15

*Newton v. Kraft Heinz Foods Co.*,
    16-cv-04578 (RJD) (RLM), 2018 WL 11235517 (E.D.N.Y. Dec. 18, 2018)........ 16

*Orlander v. Staples, Inc.*,
    802 F.3d 289 (2d. Cir. 2015)................................................................................ 4

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20 (1995) ........................................................................................... 4

*Panda Capital Corp. v. Kopo Int'l, Inc.*,
    242 A.D.2d 690, 662 N.Y.S.2d 584 (1997) ....................................................... 14

*Ross v. Bolton*,
    904 F.2d 819 (2d Cir.1990)................................................................................ 13

*Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc.*,
    748 F.2d 774 (2d Cir. 1984)................................................................................ 3

*S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*,
    84 F.3d 629 (2d Cir. 1996)................................................................................ 13

*Sarr v. BEF Foods*,
    No. 18-cv-6409 (ARR), 2020 WL 729883 (E.D.N.Y. Feb. 13, 2020) ................. 19

*Silva v. Smucker Nat. Foods*,
    14-cv-6154 (JG) (RML), 2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015)............. 15

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
    No. 14-cv-3826 (MKB), 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) .............. 8

*Suez v. Equity Investors, L.P. v. Toronto-Dominion Bank*,
    250 F.3d 87 (2d Cir. 2001)................................................................................ 18

*Tomasino v. Estee Lauder Cos.*,
    44 F. Supp. 3d 251 (E.D.N.Y. 2014) ................................................................ 14

*Weisblum v. Prophase Labs, Inc.*,
   88 F. Supp. 3d 283 (S.D.N.Y. 2015) ........................................................................ 17

*Werbel v. Pepsico, Inc.*,
   No. 09-cv-4456, 2010 WL 2673860
   (N.D. Cal. July 2, 2010) ............................................................................................... 5

**Rules**

Fed. R. Civ. P.  8(e)(2) .................................................................................................... 15

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 2

**Statutes**

15 U.S.C. § 2310(d)(3) .................................................................................................... 13

N.Y. Gen. Bus. Law § 349 ................................................................................................. 1

N.Y. Gen. Bus. Law § 350 .......................................................................................... 1, 3

N.Y. U.C.C. § 2-314 ....................................................................................................... 13

N.Y. U.C.C. § 2-607(3) ................................................................................................... 12

## INTRODUCTION

Plaintiff Idalia Valcarcel ("Plaintiff") submits this Memorandum of Law in Opposition to the Motion by Defendant Ahold U.S.A., Inc. ("Defendant" or "Ahold") to Dismiss the Complaint ("Compl."). ECF Nos. 1, 15.

Plaintiff brings claims for damages for violations of GBL §§ 349 and 350, Compl. ¶¶ 67-72, and common law claims, Compl. ¶¶ 73-87, on behalf of a proposed class of New York consumers who purchased its Stop and Shop brand cinnamon graham crackers ("Product"). Compl. ¶ 1. Plaintiff seeks monetary and injunctive relief, expenses, and reasonable attorneys' fees. Compl. at 14; Prayer for Relief, ¶¶ 2-6.

Defendant argues Plaintiff's claims are "implausible, unsupported by well-pleaded facts, and fail as a matter of law." *See* ECF No. 16, Defendant's Memorandum of Law in Support of Motion to Dismiss ("Def. Mem."). Defendant's arguments are contrary to legal authority and its motion should be denied.

## FACTUAL BACKGROUND

Defendant sells cinnamon-flavored crackers identified with the name of a whole grain flour, identified as "GRAHAM Crackers" ("Product"). Compl. ¶ 1. This caused Plaintiff and reasonable consumers to expect "that graham flour – a type of whole grain flour – is the primary and predominant flour ingredient used." Compl. ¶ 4.

Additionally, the use of a small amount of molasses and honey causes the crackers "[to] brown[s] easily during baking, adding a natural dark color," which "[C]onsumers associate…with a significant amount of whole grain ingredients." Compl. ¶¶ 20, 23.

However, the "ingredient list reveals 'Enriched Wheat Flour' is the predominant flour, indicated by its listing ahead of 'Graham Flour (Whole Grain Wheat Flour).'" Compl. ¶ 9.

Plaintiff "relied on the[se] representations," and her common sense understanding of the

words used on the label. Compl. ¶¶ 5, 54. Had Plaintiff known the truth – that "the amount of whole grain wheat [graham] flour in the Product is approximately twenty-five percent of the amount of refined flour," she "would not have bought the Product or would have paid less for it." Compl. ¶¶ 18, 34.

## LEGAL STANDARDS

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Rule 12(b)(6) does not countenance…dismissals based on a judge's disbelief of a complaint's factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* "[A] plaintiff [need only] plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The Court "is required to accept as true the facts alleged in the complaint, consider those facts in the light most favorable to the plaintiff, and determine whether the complaint sets forth a plausible basis for relief." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443 (2d Cir. 2015). A court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Hanley v. Chicago Title Ins. Co.*, No. 12-cv-4418 (ER), 2013 WL 3192174, at *2 (S.D.N.Y. June 24, 2013).

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir. 1984). When

deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *Hishon v. King,* 467 U.S. 69, 73 (1984).

The "issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995).

## ARGUMENT

## I.    PLAINTIFF PLAUSIBLY ALLEGED DECEPTION

Plaintiff brings claims under GBL §§ 349 and 350, which New York's highest court has recognized are founded on the overarching belief that "[c]onsumers have the right to an honest market place where trust prevails between buyer and seller." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995). "These statutes on their face apply to virtually all economic activity, and their application has been correspondingly broad." *Karlin v. IVF Am., Inc.*, 93 N.Y.2d 282, 290 (1999).

"To successfully assert a claim under either section, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d. Cir. 2015).

Whether a representation is likely to mislead a reasonable consumer "is generally a question of fact not suited for resolution at the motion to dismiss stage." *Duran v. Henkel of America, Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020).

A.    <u>Expecting "Graham Crackers" to Have a Connection to Graham Flour is Not "Hyper-Literal"</u>

Defendant describes Plaintiff's expectations as "especially unreasonable" and "hyper-literal," because "[R]easonable consumers do not equate 'graham crackers' with "graham flour," just as they do not associate soda water with soda, butternut squash with butter, or cream of tartar with cream." Def. Mem. at 21 citing *Nashville Syrup Co. v. Coca Cola Co.*, 215 F. 527, 532 (6th Cir. 1914) (declining to find that the trademarked name, Coca Cola, was misleading as to the amount of coca leaves or cola nuts because this question "must be decided as of the time of adoption.").

However, to expect a graham cracker to conform to the way  multiple dictionaries describe it, as "a slightly sweet cracker made of whole wheat flour" and "a semisweet cracker, usually rectangular in shape, made chiefly of whole-wheat flour," is far from equivalent to expecting Cap'n Crunch cereal to contain berries and Froot Loops cereal to contain actual fruit. Def. Mem. at 16 citing *Werbel v. Pepsico, Inc.*, No. 09-cv-4456, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) ("Cap'n Crunch"); *McKinnis v. Kellogg USA*, No. 07-cv-2611, 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007) ("Froot Loops").

Defendant's comparison of a product, graham crackers, that references the name of an established food, to products which promised "Froot" and "Crunch Berries" fails because these are fanciful names, which by definition are "overimaginative and unrealistic" – such as "moon pie" or "Hershey's Kisses."

Plaintiff does not seek something unrealistic, as "[G]raham flour is an alternative name for whole wheat flour," a type of cereal flour for which the FDA established standards of identity decades ago. Compl. ¶ 13.

4

B.     *Mantikas* Does Not Require that Plaintiff Review the Ingredient List

In *Mantikas v. Kellogg Co.*, 910 F.3d 633, 634-35 (2d Cir. 2018), the plaintiffs alleged deception as to the whole grain content of a type of cracker based on front label claims of "WHOLE GRAIN," "MADE WITH WHOLE GRAIN," and "Made with 5g [or 8g] of WHOLE GRAIN per serving." The district court dismissed the complaint because the ingredient list indicated that non-whole grain, white flour was the predomnant ingredient. The Second Circuit reversed, and held that it "cannot conclude that these disclosures on the side of the box render Plaintiffs' allegations of deception implausible." *Mantikas*, 910 F.3d at 637.

Defendant asks the Court to disregard *Mantikas*, because "the packaging nowhere says 'Whole Grain,' 'Made with Whole Grain,' or 'Made with Graham Flour.'" Def. Mem. at 24 *Mantikas*, 910 F.3d at 634-35. While this argument may be technically correct, it is incomplete.

First, Plaintiff alleged that "[T]he Product's name, and the emphasis on the word 'Graham,' gives reasonable consumers the impression that graham flour – a type of whole grain flour – is the primary and predominant flour ingredient used." Compl. ¶ 4.

Second, "the absence of [made with graham flour] is not dispositive," as the Second "Circuit's decision in Mantikas did not suggest that it turned on the presence of those words." *Campbell v. Whole Foods Market Group, Inc.*, 516 F. Supp. 3d 370, 383 (S.D.N.Y. 2021).

The court in *Campbell* "infer[red] that a reasonable consumer would construe the reference to graham here, like the reference to 'whole wheat' in Mantikas as something that the crackers are made with—even if the words 'made with' do not appear on the packaging." *Campbell*, 516 F. Supp. 3d at 383.

As Plaintiff alleged she was "aware of the meaning of the word 'graham,' [she] [would] read the packaging in essentially the same way as the plaintiffs in Mantikas," and "the packaging

[would] "communicate[s] to the reasonable consumer that the grain in the product is predominantly, if not entirely, whole grain." *Campbell*, 516 F. Supp. 3d at 383 quoting Mantikas, 910 F.3d at 637.

*Campbell* distinguished a similar set of facts, where a court concluded "a reasonable consumer would [not] associate 'graham' as meaning 'graham flour,' and as a result assume that graham flour is either the predominant ingredient in the product or that graham flour predominates over other types of flour." *Kennedy v Mondelez Glob. LLC*, No. 19-cv-302, 2020 WL 4006197, at *1 (E.D.N.Y. Jul. 10, 2020).

In *Kennedy*, the court found plaintiff's "dictionary definitions" to be "without merit" in establishing an association between graham flour and graham crackers, and reasoned that because that product contained *some* graham flour, "the representation cannot be false." Campbell, 516 F. Supp. 3d at 385 n. 6 (concluding that this position is "simply not sustainable in this Circuit after Mantikas") citing *Kennedy v Mondelez Glob. LLC*, 2020 WL 4006197, at *10.

Another court in this district came to the same conclusion as *Campbell*, where a plaintiff alleged a product's representation as "Grahams" could mislead consumers as to the relative amount of whole grain graham flour. *Watson v. Kellogg Sales Co.*, No. 19-cv-1356 (DLC), 2019 WL 10734829, at *1 (S.D.N.Y. Oct. 29, 2019) ("With respect to the GBL and express warranty claims, I'm permitting those to proceed. With respect to the word "graham," "g-r-a-h-a-m," as in graham crackers," noting that "the Second Circuit recently wrote in Mantikas about these issues").

Plaintiff's expectation – that "Graham Crackers" meant more whole grain graham flour than refined white flour – is not "'patently implausible' or unrealistic." *Eidelman v. Sun Prod. Corp.*, No. 16-cv-3914 (NSR), 2017 WL 4277187, at *4 (S.D.N.Y. Sept. 25, 2017) (noting that "dismissal on a Rule 12(b)(6) motion is often not appropriate where doing so would require

assessing how a reasonable consumer would respond to particular representations") citing *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-cv-3826 (MKB), 2015 WL 5579872, at *20 (E.D.N.Y. Sept. 22, 2015) (noting that plaintiffs' allegations – that the labeling of defendant's yogurt as "Total 0%" caused them to believe it did not contain calories or fat "d[id] not present the type of patently implausible claim that warrants dismissal as a matter of law based on the reasonable consumer prong.").

On a motion to dismiss, "to conclude as a matter of law that an interpretation is unreasonable requires satisfying 'the *heavy burden of 'extinguish[ing] the possibility'* that a reasonable consumer could be misled." *Eidelman*, 2017 WL 4277187, at *4 (emphasis in original) quoting *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-md-2413, 2013 WL 4647512, at *15-16 (E.D.N.Y. Aug. 29, 2013) (declining to dismiss allegations that "all natural" representations on corn chips meant they did not contain genetically modified organisms ("GMOs"), since "dismissal as a matter of law is warranted where allegedly misleading interpretation *"border[ed] on fantasy"*) (emphasis in *Eidelman*).

## II.   PLAINTIFF'S  ALLEGATIONS ARE NOT PREEMPTED

Defendant asserts the "Product is federally regulated under the FDCA, which is administered by the FDA," and because Plaintiff's "state-law claim challenges label statements that are required or expressly allowed by FDA regulations, that claim is preempted." Def. Mem. at 15.

However, Plaintiff's claims' do not seek to "impose labeling standards that go 'beyond, or [are] different from' federal labeling standards that the FDA has established." *In re Pepsico, Inc., Bottled Water Mktg. & Sales Practices Litig.*, 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008).

7

A.    The Product's "Common or Usual Name" is Not "Uniform Among All Identical or Similar Products"

Defendant states that the "'Graham Crackers' accurately describes the Product because it is a cracker made with graham flour and is the same term used to identify products with similar shape, texture, and composition." Def. Mem. at 15-16 citing 21 C.F.R. § 102.5(a).

In support, Defendant argues that such products "have been sold under the common, usual name 'graham crackers' for decades," but fails to introduce evidence of similar products which have similar compositions. Def. Mem. at 15.

In contrast, Plaintiff identified two brands of crackers which contain whole grain graham flour as their predominant flour ingredient. Compl. ¶ 30. That these two products are labeled as "graham crackers" shows that Defendant's Product's name is *not* "uniform among all identical or similar products." 21 C.F.R. § 102.5(a).

Moreover, Defendant's argument that "'Graham Crackers' thus not only complies with but is ***mandated by*** FDA regulations requiring products to be identified by their common, usual name" is wholly unsupported by any regulation. Def. Mem. at 16 citing Painter v. Blue Diamond Growers, No. 17-cv-02235-SVW-AJW, 2017 WL 4766510, at *2 (C.D. Cal. May 24, 2017), aff'd, 757 F. App'x 517 (9th Cir. 2018) (finding that requiring "almond milk" be labeled as "imitation milk" was preempted).

Defendant's introduction of a Department of Agriculture Commercial Item Description is not relevant to whether a reasonable consumer is misled, as the foods they identify are distributed to captive audiences and "institutional programs like the school lunch program, the military, and other government facilities." Def. Mem. at 16.

B.     Plaintiff's Allegations are not Based on Federal Regulations

While Plaintiff alleged the Product's name violates FDA regulations, Defendant's labeling constitutes deceptive business practices under GBL § 349 and false advertising under GBL § 350, by representing the Product as having "more whole grain flour" than it does. Compl. ¶¶ 8, 16 ("By highlighting the Product's whole grain ingredient, "GRAHAM," as part of the product name, larger than everything else on the label, Defendant is highlighting the presence of nutrients associated with whole grains – fiber."), ¶ 28 ("Whole grain graham flour is a characterizing ingredient because its proportion has a material bearing on price and consumer acceptance").

This is a "'free-standing claim[s] of deceptiveness under GBL § 349 that happen[s] to overlap with a possible claim' under another statute that is not independently actionable." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 200 (2d Cir. 2005).

Plaintiff's allegations "sound[s] in traditional principles of state [consumer protection] law and would give rise to recovery even had the FDCA never been enacted." *In re Bayer Corp. Combination Aspirin Prods. Mktg. and Sales Practices Litig.*, 701 F. Supp. 2d 356, 369 (E.D.N.Y. 2010); *In re DDAVP Indirect Purchaser Antitrust Lit.*, 903 F. Supp. 2d 198, 220 (S.D.N.Y. 2012) (claims based on separate consumer protection grounds not subject to implied preemption).

III.   **PLAINTIFF'S PRICE PREMIUM CLAIM IS SUFFICIENT TO SHOW AN INJURY UNDER THE GBL**

Defendant's argument – that Plaintiff "has not sufficiently alleged that she 'suffered injury' as a result of the Product label, which is a required element of her GBL claim," is without support. Def. Mem. at 27.

Defendant concedes that "[A]n overpayment—or so-called price premium—caused by the allegedly deceptive practice can satisfy the injury requirement," but concludes that Plaintiff "has not alleged any facts to support her conclusory allegations of a price premium." Def. Mem. at 27-

9

28 citing *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018) and

*Izquierdo v. Mondelez International Inc.*, No. 16-cv-04697, 2016 WL 6459832 (S.D.N.Y. Oct. 26,

2016).

      Defendant's authorities are outliers. In *Colella*, the plaintiff alleged *all* Atkins products

were marketed deceptively, and he failed to identify *what* he purchased and *how much* he paid.

348 F. Supp. 3d at 143. In *Izquierdo* the plaintiffs "did not allege[] that they paid a higher price of

the Candy than they otherwise would have, absent deceptive acts." 2016 WL 6459832, at *7.

      In contrast to *Coella* and *Izquierdo*, Plaintiff did more than "merely invoking the term

'price premium,'" by alleging that "[T]he value of the [specific] Product that plaintiff purchased

was materially less than its value as represented by defendant," and but for the misrepresentations,

the Product was sold "at higher prices." Def. Mem. at 27-28; Compl. ¶¶ 32-33; *Goldemberg v.*

*Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 480-82 (S.D.N.Y. 2014)

(finding price premium allegations sufficient where plaintiff alleges "the price of the product was

inflated as a result of [the] defendant's deception."); *Koenig v. Boulder Brands, Inc.,* 995 F. Supp.

2d 274, 288 (S.D.N.Y. 2014) ("A plaintiff adequately alleges injury under GBL § 349 by claiming

that he paid a premium for a product based on the allegedly misleading representations.").

      Almost all courts considering *Izquierdo* have declined to adopt its conclusions. *Daniel v.*

*Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 197 (E.D.N.Y. 2018) ("this Court disagrees with such a

ruling."); *Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d 38, 69 (E.D.N.Y. 2017) ("*Izquierdo*

contradicts the weight of the law in this Circuit.").

**IV.     COMMON LAW CLAIMS ARE SUFFICIENTLY PLED**

    A.     <u>The Complaint Exceeds Particularity Requirements for Fraud</u>

    Defendant argues Plaintiff failed to "allege facts that give rise to a strong inference of fraudulent intent." Def. Mem. at 32-33 citing *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp*., 84 F.3d 629, 634 (2d Cir. 1996).

    However, the allegations meet – and exceed – the "primary purpose of Rule 9(b)," by (1) providing **what** statements ["Graham Crackers"] (or omissions) that the Plaintiff contends are fraudulent, (2) identifying **who** was the speaker [Defendant], (3) stating **where** [ "Stop and Shop, 961 E 174th St Bronx NY 10460-5060"] and **when** the statements (or omissions) were made ["between January 2021 and February 2021"] and (4) explaining **why** the statements are fraudulent ["Graham refers to whole grain flour but the Product contains enriched wheat flour as its predominant flour."]." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015) (emphasis added); Compl. ¶¶ 1, 8-9, 47, 49.

    These allegations meet the "primary purpose of Rule 9(b)," which "is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based." *Ross v. Bolton,* 904 F.2d 819, 823 (2d Cir.1990).

    B.     <u>Plaintiff's Warranty Claims are Sufficient</u>

    Defendant argues that Plaintiff's express and implied warranty claims should be dismissed for reasons including a failure to provide pre-suit notice and allege the Product was unfit for human consumption. Based on these purported deficiencies, the Magnuson-Moss Warranty Act ("MMWA") claim also fails. Def. Mem. at 30-32. These arguments are deficient, as Plaintiff's warranty claims are adequately pled.

     1.     *Defendant's Argument Based on Lack of Pre-Suit Notice Fails*

Defendant argues that failure to provide "pre-suit notice is grounds for dismissing each of the warranty claims asserted here." Def. Mem. at 30-31 citing *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 260-61 (E.D.N.Y. 2014).

This proposition lacks support as New York cases applying N.Y. U.C.C. § 2-607(3)(a) "suggest that a plaintiff's pleadings may constitute reasonable notice in certain cases." *Tomasino*, 44 F. Supp. 3d at 261 fn. 6 citing *Panda Capital Corp. v. Kopo Int'l, Inc.*, 242 A.D.2d 690, 662 N.Y.S.2d 584, 586 (1997) (applying N.Y. U.C.C. § 2-607(3) and recognizing a complaint can "constitute[d] such notice").

Plaintiff alleged she "bought the Product…between January 2021 and February 2021," and commenced this action in September 2021, less than eight months later. Compl. ¶ 49. Whether "plaintiff rejected the nonconforming goods in a timely fashion" implicates "triable issues of fact," ill-suited to a motion to dismiss.

Defendant's argument also fails because "New York cases suggest[ing] that the notice requirement does not apply to retail sales." *Neri v. R.J. Reynolds Tobacco Co.*, No. 98-cv-371, 2000 WL 33911224, at *19 (N.D.N.Y. Sept. 28, 2000) citing *Fischer v. Mead Johnson Labs.*, 41 A.D.2d 737, 737 (2d Dep't 1973).

     2.     *That the Product Could Not Pass in Trade as Made Predominantly from Whole Grains Supports Implied Warranty Claim*

Defendant contends that the implied warranty of merchantability claim fails because "a food product is unmerchantable only if it is unfit for human consumption." Def. Mem. at 31 citing *Silva v. Smucker Nat. Foods*, No. 14-cv-6154 (JG) (RML), 2015 WL 5360022, at *11 (E.D.N.Y. Sept. 14, 2015).

Defendant's "unfit for human consumption" argument disregards that an implied warranty of merchantability requires "the goods must be: (1) fit for the ordinary purpose for which they are used; (2) capable of passing without objection in the trade under the contract description; and (3) of fair and average quality for such goods." *Jackson v. Eddy's LI RV Ctr., Inc.*, 845 F. Supp. 2d 523, 527 (E.D.N.Y. 2012) citing N.Y. U.C.C. § 2-314(2)(c).

Though Plaintiff did not allege the Product was "unfit for human consumption," it could not "pass without objection in the trade under the contract description," and did not "conform to the promises or affirmations of fact made on the container or label," because it "[P]urport[ed] to be made predominantly with whole grain graham flour," yet "'Enriched [non-whole grain] Wheat Flour' is the predominant flour." N.Y.U.C.C. § 2-314(2)(a), (f); Compl. ¶¶ 1, 9.

### 3.    The MMWA Applies because "Graham[s]" is a Written Warranty About the Whole Grain Content

Defendant argues that because the "express and implied warranty claims [should be] dismissed," "so is [his or] her MMWA claim." Def. Mem. at 31 citing *In re: Gen. Motors LLC Ignition Switch Litig.*, 14-md-2543 (JMF), 2016 WL 3920353, at *18 (S.D.N.Y. July 15, 2016).

Notwithstanding that the warranty claims are viable, Defendant asserts that "the challenged statements are not written warranties under the MMWA" because it does not promise the Product "is defect free or will meet a specified level of performance over a specified period of time." Def. Mem. at 31-32 citing 15 U.S.C. § 2310(d)(1), 15 U.S.C. § 2301(6)(A) and *Newton v. Kraft Heinz Foods Co.*, 16-cv-04578 (RJD) (RLM), 2018 WL 11235517, at *6 (E.D.N.Y. Dec. 18, 2018) (finding labels are "[m]ere product descriptions.").

However, "'GRAHAM' is the biggest word on the front label and written in all capital letters," which tells purchasers that the "whole grain flour [–] is the primary and predominant flour

ingredient used." Compl. ¶¶ 3-4. That consumers expect "whole grain foods are high in fiber," which is critical in providing satiety, represents that the Product "will meet a specified level of performance over a specified period of time." Compl. ¶¶ 1, 8, 73; *Bourbia v. SC Johnson & Son, Inc.*, 375 F. Supp. 3d 454, 465 (S.D.N.Y. 2019) (quoting 15 U.S.C. § 2301(6)(A) and denying dismissal of MMWA claim where insect repellant warranted it "repels mosquitoes and provides effective protection from mosquitoes," "and instructed consumers to [re]apply ever 3-4 hours. Frequent reapplication and saturation are unnecessary.").

The Product warrants it is "defect free" because "reasonable consumers expect a food identified by such a name [graham crackers] to have more whole grain flour" than refined white flour, even though "[T]he amount of whole grain wheat flour…is approximately twenty-five percent of the amount of refined flour." Compl. ¶¶ 8, 18.

Defendant's jurisdictional challenge to the MMWA claim based on the absence of "at least 100 named plaintiffs," is not relevant, because Plaintiff did not "invoke[d] the MMWA as a basis for the Court's jurisdiction," but relied on "the 'Class Action Fairness Act of 2005 ('CAFA').'" Def. Mem. at 32 citing 15 U.S.C. § 2310(d)(3); *see Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 293 (S.D.N.Y. 2015) (concluding that allowing plaintiffs to bring class actions alleging violations of the MMWA "furthers the purpose of CAFA [28 U.S.C. § 1332(d)] without undermining the purposes of the MMWA's jurisdictional limitations.").

C.     The Parties' Special Relationship Supports Negligent Misrepresentation Claim

Defendant contends that Plaintiff's negligent misrepresentation claim fails based on the absence of "a special relationship between herself and Ahold." Def. Mem. at 29-30 quoting *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263-264, 675 N.E.2d 450, 454 (1996).

In contrast to Defendant's claim that Plaintiff "fail[ed] to specify in what subject area Ahold supposedly held itself out as having 'special knowledge and experience,'" the Complaint alleged Defendant was "a supermarket with an established reputation for quality, as promised through the front label seal." Def. Mem. at 29 *compare with* Compl. ¶ 52.

Moreover, even if "[e]xpertise alone cannot create a special relationship when 'the relationship between the parties is too attenuated,'" this is a question that is not capable of being addressed on a Rule 12 motion. Def. Mem. at 29 quoting *Mahoney v. Endo Health Sols*., Inc., 15-cv-9841 (DLC), 2016 WL 3951185, at *4 (S.D.N.Y. July 20, 2016) *compare with Suez v. Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 104 (2d Cir. 2001) ("a determination of whether a special relationship exists is essentially a factual inquiry.").

Finally, the fact that "the Product's primary flour ingredient is not graham flour—is 'public information, plainly available on the [Product]'s ingredient label," does not relieve Defendant of responsibility, because it "knew that Plaintiff[s] would rely on those claims." Compl. ¶¶ 1, 9, 83; *Greene v. Gerber Products Co.*, 262 F. Supp. 3d 38, 75 (E.D.N.Y. 2017) (denying dismissal of negligent misrepresentation where plaintiff plausibly alleged "Defendant possessed special expertise and knowledge about the health claims on its Infant Formula advertisements"); Def. Mem. at 30 quoting *Sarr v. BEF Foods*, No. 18-cv-6409 (ARR), 2020 WL 729883, at *6 (E.D.N.Y. Feb. 13, 2020).

D.   Unjust Enrichment is Permitted because a Party Can Plead in the Alternative

Defendant argues that the Court should dismiss Plaintiff's unjust enrichment claim because "it simply duplicates, or replaces, a conventional contract or tort claim." Def. Mem. at 33 quoting *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012). However, "[u]nder Rule 8(e)(2) of the Federal Rules of Civil Procedure, a plaintiff may plead two or more statements of a

claim, even within the same count, regardless of consistency." *Henry v. Daytop Vill., Inc.,* 42 F.3d 89, 95 (2d Cir.1994).

To the extent Plaintiff cannot satisfy the GBL or common law claims, the Court may hold that the unjust enrichment claim is viable. Thus, because questions of fact remain as to all of Plaintiff's claims, dismissal of unjust enrichment is premature.

## V.   PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF

Contrary to Defendant's argument, Plaintiff has standing to pursue injunctive relief because she is unable to rely on the accuracy of the Product's front label in the future, which causes her to avoid purchasing the Product, even though she would like to. Def. Mem. at 33-35 citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); Compl. at 14; Prayer, ¶¶ 2-3. This constitutes an imminent threat of future harm sufficient to satisfy Article III's injury in fact requirement. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181–85 (2000).

Even the Second Circuit's recent opinion in *Berni v. Barilla S.p.A.*, *et al. v. Schulman*, does not, as Defendant argues, stymie Plaintiff's request for injunctive relief. Def. Mem. at 34; 964 F.3d 141 (2d Cir. 2020). The court in *Berni* correctly recognized that for purposes of class certification, injunctive relief addressed to past conduct was insufficient to meet the requirements of Rule 23(b)(2). Plaintiff here, as a proposed class representative, seeks monetary damages *in addition to* injunctive relief. In *Berni*, millions of other class members would have their rights extinguished in support of a settlement which granted them fictitious relief in the form of a "fill-line." This case, at the pleading stage, does not require a conclusion which denies any injunctive relief.

Numerous courts have concluded that the inability to rely on the labels in the future, as alleged in the Complaint, constitutes a threat of harm. *See, e.g.*, *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) ("plaintiffs have standing to seek injunctive

relief…because to 'hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief'"); *Goldemberg v. Johnson & Johnson Consumer Cos.*, 317 F.R.D. 374, 397 (S.D.N.Y. 2016) (holding that the fact that "Plaintiff would continue to purchase the Products in the future if the misleading labeling is corrected is sufficient to demonstrate an intent to purchase products in the future that subjects them to future harm").

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion or in the alternative grant leave to file an Amended Complaint.

Dated:   November 29, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
spencer@spencersheehan.com
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080

**Certificate of Service**

I certify that on November 29, 2021, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | CM/ECF | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☒ | ☐ | ☐ | ☐ |
| Plaintiff's Counsel | ☒ | ☐ | ☐ | ☐ |
| Courtesy Copy to Court | ☐ | ☐ | ☐ | ☐ |

/s/ Spencer Sheehan