# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Idalia Valcarcel, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>Ahold U.S.A., Inc.,<br><br>    Defendant. | 1:21-cv-07821-JSR<br><br>**ORAL ARGUMENT SCHEDULED FOR 12/20/2021 AT 3:00PM** |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COMPLAINT

FAEGRE DRINKER BIDDLE & REATH LLP

Sarah L. Brew (admitted *pro hac vice*)
Tyler A. Young (admitted *pro hac vice*)
Rory F. Collins (NY Bar No. 5549670)
Emily R. Zambrana (admitted *pro hac vice*)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Telephone: (612) 766-7000
Fax: (612) 766-1600
sarah.brew@faegredrinker.com
tyler.young@faegredrinker.com
rory.collins@faegredrinker.com
emily.zambrana@faegredrinker.com

*Attorneys for Defendant Ahold U.S.A., Inc.*

Date: December 6, 2021

## <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 1

 I. Valcarcel Concedes the Facts Showing that Her Claims Are Preempted.............. 1

 II. The Product Label Is Not Materially Misleading to Reasonable
  Consumers................................................................................................................ 2

  A. Reasonable consumers understand that "graham crackers" refers to
   the type of food. ....................................................................................... 3

  B. The Product label as a whole makes clear that graham flour is not
   the primary flour. ..................................................................................... 4

 III. Valcarcel's Conclusory Allegations of a Price Premium Fail to
  Sufficiently Plead Injury Under the GBL. .............................................................. 6

 IV. Valcarcel's Common Law Claims Fail as a Matter of Law for Additional
  Reasons. .................................................................................................................. 7

 V. Valcarcel Lacks Standing to Seek Injunctive Relief............................................. 9

 VI. Valcarcel's Complaint Should Be Dismissed with Prejudice............................. 10

CONCLUSION.................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ang v. Whitewave Foods Co.*,
   2013 WL 6492353 (N.D. Cal. Dec. 10, 2013) ........................................................................ 2

*Bassaw v. United Indus. Corp.*,
   482 F. Supp. 3d 80 (S.D.N.Y. Aug. 31, 2020) ........................................................................ 8

*Belfiore v. Procter & Gamble Co.*,
   311 F.R.D. 29 (E.D.N.Y. 2015) .......................................................................................... 10

*Berman v. Morgan Keegan & Co.*,
   2011 WL 1002683 (S.D.N.Y. Mar. 14, 2011), *aff'd*, 455 F. App'x 92 (2d Cir.
   2012) ................................................................................................................................... 10

*Berni v. Barilla S.p.A.*,
   964 F.3d 141 (2d Cir. 2020) ........................................................................................... 9, 10

*Campbell v. Whole Foods Market Group, Inc.*,
   516 F. Supp. 3d 370 (S.D.N.Y. 2021) .............................................................................. 4, 5

*Colella v. Atkins Nutritionals, Inc.*,
   348 F. Supp. 3d 120 (E.D.N.Y. 2018) ............................................................................. 6, 8

*Davis v. Hain Celestial Grp., Inc.*,
   297 F. Supp. 3d 327 (E.D.N.Y. 2018) ................................................................................. 4

*Ebin v. Kangadis Food Inc.*,
   2013 WL 3936193 (S.D.N.Y. July 26, 2013) ...................................................................... 9

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013) ................................................................................................ 2

*Floyd v. Am. Honda Motor Co.*,
   966 F.3d 1027 (9th Cir. 2020) ............................................................................................. 9

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*,
   317 F.R.D. 374 (S.D.N.Y. 2016) ....................................................................................... 10

*Greene v. Gerber Products Co.*,
   262 F. Supp. 3d 38 (E.D.N.Y. 2017) ............................................................................... 7, 8

*Harris v. McDonald's Corp.*,
   2021 WL 2172833 (N.D. Cal. Mar. 24, 2021) ..................................................................... 6

*Harris v. Mondelez Glob. LLC*,
  2020 WL 4336390 (E.D.N.Y. July 28, 2020) ........................................................5

*Izquierdo v. Mondelez International Inc.*,
  2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ......................................................6, 7

*Kennedy v. Mondelez Glob. LLC*,
  2020 WL 4006197 (E.D.N.Y. July 10, 2020) ......................................................3, 5

*Lima v. Post Consumer Brands, LLC*,
  2019 WL 3802885 (D. Mass. Aug. 13, 2019) .........................................................4

*Lugones v. Pete & Gerry's Organic, LLC*,
  440 F. Supp. 3d 226 (S.D.N.Y. 2020) ....................................................................8

*Mantikas v. Kellogg Co.*,
  910 F.3d 633 (2d Cir. 2018) ...........................................................................4, 5, 6

*Nashville Syrup Co. v. Coca Cola Co.*,
  215 F. 527 (6th Cir. 1914) .....................................................................................3

*Nelson v. MillerCoors, LLC*,
  246 F. Supp. 3d 666 (E.D.N.Y. 2017) ....................................................................9

*NewSpin Sports, LLC v. Arrow Elecs., Inc.*,
  910 F.3d 293 (7th Cir. 2018) .................................................................................9

*Niles v. Beverage Mktg. USA, Inc.*,
  2020 WL 4587753 (E.D.N.Y. Apr. 16, 2020) .........................................................8

*Painter v. Blue Diamond Growers*,
  2017 WL 4766510 (C.D. Cal. May 24, 2017), *aff'd*, 757 F. App'x 517 (9th
  Cir. 2018) ...............................................................................................................2

*Quintanilla v. WW Int'l, Inc.*,
  2021 WL 2077935 (S.D.N.Y. May 24, 2021) .........................................................9

*S.E.C. v. Syron*,
  934 F. Supp. 2d 609 (S.D.N.Y. 2013) ................................................................2, 9

*Steele v. Wegmans Food Markets, Inc.*,
  472 F. Supp. 3d 47 (S.D.N.Y. 2020) ......................................................................6

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank*,
  250 F.3d 87 (2d Cir. 2001) .....................................................................................7

*In re Tamoxifen Citrate Antitrust Litig.*,
466 F.3d 187 (2d Cir. 2006), *abrogated on other grounds by F.T.C. v. Actavis, Inc.*, 570 U.S. 136 (2013)..................................................................................10

*In re UBS AG Sec. Litig.*,
2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012).......................................................1

*Watson v. Kellogg Sales Co.*,
2019 WL 10734829 (S.D.N.Y. Oct. 29, 2019)......................................................6

*Winston v. Hershey Co.*,
2020 WL 8025385 (E.D.N.Y. Oct. 26, 2020)........................................................6

*Wynn v. Topco Assocs., LLC*,
2021 WL 168541 (S.D.N.Y. Jan. 19, 2021).........................................................6

## STATUTES, RULES & REGULATIONS

21 C.F.R. § 101.3(b) .............................................................................................1

21 C.F.R. § 101.18(b) ...........................................................................................2

21 C.F.R. § 102.5(a)..........................................................................................1, 2

21 C.F.R. § 102.5(b) .............................................................................................2

15 U.S.C. § 2301(6)(A).........................................................................................8

21 U.S.C. § 343-1(a)(3) ........................................................................................1

## OTHER AUTHORITIES

Merriam-Webster's Dictionary, *Graham Flour*, https://www.merriam-webster.com/dictionary/graham%20flour................................................................5

## INTRODUCTION

Plaintiff's Opposition confirms that this case should be dismissed. Plaintiff Valcarcel concedes the facts necessary to find preemption, offers nothing to suggest that the product name "Graham Crackers" misleads reasonable consumers, fails to demonstrate the sufficiency of her conclusory price-premium allegations, and fails to support her common-law claims.

## ARGUMENT

### I.   Valcarcel Concedes the Facts Showing that Her Claims Are Preempted.

Plaintiff's Complaint seeks to challenge a label statement affirmatively required by FDA regulations, the Product's statement of identity: "Graham Crackers." 21 C.F.R. § 101.3(b). Plaintiff's claims are therefore preempted under 21 U.S.C. § 343-1(a)(3).

Valcarcel does not dispute that FDA regulations require the Product to be labeled with its "common or usual name," nor that "Graham Crackers" is the Product's common or usual name. (Opp. 8). Valcarcel has therefore waived these issues. *See In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (a plaintiff who does not respond to a point raised by a defendant on a motion to dismiss "concedes" that point "through silence").

At most, Valcarcel argues that "Graham Crackers" is also the common, usual name of products that contain graham flour as the first ingredient. (Opp. 8 (citing Compl. ¶ 30)). This, however, does not mean that "Graham Crackers" is not the common, usual name of a cracker that, like Defendant's Product, contains graham flour as its second ingredient. FDA regulations state that the common, usual name "shall be uniform among all identical or *similar* products." 21 C.F.R. § 102.5(a) (emphasis added). The graham cracker products that Valcarcel identifies in her Complaint *are similar* to the Product. All three are flat, rectangular, perforated, darker-colored, sweet, crunchy crackers. And all three contain whole wheat flour, sugar, an oil ingredient, molasses, honey, and salt. (*Compare* Compl. ¶ 9, with *id.* ¶ 30). They are all "graham crackers."

Valcarcel also argues that the FDA regulations requiring use of the "common or usual name" do not specify the name "graham crackers" for any products (Opp. 8), but that is true of most food products and does not defeat preemption. In both cases cited in Defendant's Motion, FDA regulations did not specify use of the name "almond milk," but the court still found preemption because "'almond milk' accurately describes Defendant's product" in compliance with § 102.5(a). *Painter v. Blue Diamond Growers*, 2017 WL 4766510, at *2 (C.D. Cal. May 24, 2017), *aff'd*, 757 F. App'x 517 (9th Cir. 2018); *see also Ang v. Whitewave Foods Co.*, 2013 WL 6492353, at *3 (N.D. Cal. Dec. 10, 2013) (claims against "soymilk," "almond milk," and "coconut milk" preempted because "these names clearly convey the basic nature and content of the beverages"). Valcarcel articulates no reason why the reasoning in *Painter* and *Ang* should not apply here.

Lastly, Valcarcel argues that USDA's Commercial Item Description ("CID") for graham crackers "is not relevant to whether a reasonable consumer is misled" (Opp. 8), but that is a red herring. The USDA's CID demonstrates that the Product's "common or usual name" is "Graham Crackers," and thus shows that her claims are preempted.

Ahold also demonstrated that the Product complies with two specific FDA regulations cited in Valcarcel's Complaint, 21 C.F.R. §§ 101.18(b) and 102.5(b). (Mem. 7-9). Valcarcel made no response to this argument and has therefore waived the issue. *See S.E.C. v. Syron*, 934 F. Supp. 2d 609, 631 (S.D.N.Y. 2013). Valcarcel cannot rely on these regulations to avoid preemption.

## II.    The Product Label Is Not Materially Misleading to Reasonable Consumers.

Valcarcel's claims also fail because reasonable consumers would not understand the Product's label to make a representation about the quantity of graham flour in the Product. It is black-letter law that this type of argument can be resolved on a motion to dismiss. *See Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).

**A.      Reasonable consumers understand that "graham crackers" refers to the type of food.**

Ahold explained in its opening brief that reasonable consumers understand "graham crackers" to indicate the type of food being sold, not that a specific type of flour is predominant in the food. (Mem. 10-12). In response, Valcarcel points to dictionary definitions of "graham cracker" that refer to whole wheat flour (Opp. 4) but, as Ahold explained, these dictionary definitions support Ahold's position, not Plaintiff's. (Mem. 10 & n.5). First, Ahold's Product *meets* the cited Merriam-Webster definition of "graham cracker" as "a slightly sweet cracker made of whole wheat flour," since it indisputably contains whole wheat graham flour. (Compl. ¶¶ 5, 9). While the other definition that Valcarcel relies upon from an online dictionary describes a "graham cracker" as "made chiefly of whole-wheat flour," this variation among definitions undercuts Plaintiff's assertion that "graham cracker" necessarily connotes being made predominantly with graham flour. *See Kennedy v. Mondelez Glob. LLC*, 2020 WL 4006197, at *10 (E.D.N.Y. July 10, 2020). As shown in Ahold's opening brief, most dictionaries define "graham cracker" without any reference to the amount of graham flour, so the Product's use of the term is not misleading or deceptive. (*See* Mem. 10 & n.5). Valcarcel did not respond to and therefore waived this argument.

In addition, Ahold cited several cases in which courts rejected similar hyper-literal interpretations of food names like Plaintiff's. (Mem. 11). Valcarcel says those cases do not apply because they involved so-called "fanciful names" but provides no reason why names like "Coca Cola" and "Honey Bunches of Oats" are any more fanciful than "Graham Crackers." (Opp. 4). Valcarcel likewise fails to acknowledge that these cases alleged that the product names referred to ingredients in the products, just as Valcarcel alleges that "Graham Crackers" refers to graham flour, and the courts concluded that reasonable consumers would not assume those products contained those ingredients in certain amounts. *See Nashville Syrup Co. v. Coca Cola Co.*, 215 F. 527, 531-33 (6th Cir. 1914) (unreasonable to assume Coca

Cola was composed "mainly or in essential part of the coca leaves and the cola nut"); *Lima v. Post Consumer Brands, LLC*, 2019 WL 3802885, at *7 (D. Mass. Aug. 13, 2019) (unreasonable to assume Honey Bunches of Oats was "sweetened exclusively or primarily with honey").

**B.      The Product label as a whole makes clear that graham flour is not the primary flour.**

Ahold explained in its opening brief that the Product label is not misleading because (1) the Product truly contains graham flour, (2) the Product makes no statement about the amount or predominance of graham flour, and (3) the ingredient list accurately discloses the predominance of all ingredients. Valcarcel's Opposition does not dispute the first two points. At most, she argues that the Product name "Graham Crackers" gives "the impression that graham flour" is the "predominant ingredient used." (Opp. 5 (quoting Compl. ¶ 4)). But this does not plausibly allege deception, because "[a] reasonable consumer would not understand the front label to be listing the ingredients from most to least predominant." *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 337 (E.D.N.Y. 2018). Ahold cited multiple cases that reached similar conclusions. (Mem. 14). Valcarcel has no response to these cases.

As for the third point, Valcarcel does not dispute the accuracy of the Product's ingredient list. And Valcarcel concedes that Ahold is "technically correct" in distinguishing this case from *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018), which held that "Whole Grain" was plausibly misleading on a product that contained more enriched grain than whole grain, because here Ahold's Product nowhere states "Whole Grain," "Made with Whole Grain," or "Made with Graham Flour." (Opp. 5). Valcarcel, nevertheless, contends that *Mantikas* prevents dismissal. Her argument relies solely on *Campbell v. Whole Foods Market Group, Inc.*, 516 F. Supp. 3d 370 (S.D.N.Y. 2021), which denied a motion to dismiss "graham" claims.

As Ahold explained in its opening brief, the *Campbell* decision turned on the specific packaging in that case—a point Valcarcel does not dispute. (Mem. 12 n.7). But even if the packaging at issue in *Campbell* were not distinguishable, the court's reasoning is unpersuasive for three reasons. First, the court wrongly assumed that the word "graham" necessarily refers to whole wheat flour. 516 F. Supp. at 382, 383-84. In fact, the word "graham" in "graham crackers" comes from the 1800s-era inventor of the cracker, Sylvester Graham.[1] Most consumers today know neither who Sylvester Graham is, nor what "graham flour" is, but they know what "graham crackers" are: a sweet, darker-colored, rectangular, perforated cracker used in desserts like s'mores. Ahold's Product matches that understanding.

Second, the *Campbell* court wrongly equated the product name "Graham Crackers" with the statements "Whole Grain" and "Made with Whole Grain" at issue in *Mantikas*. The *Mantikas* court found the whole grain statements plausibly misleading because they "communicate to the reasonable consumer that the grain in the product is predominantly, if not entirely, *whole* grain." 910 F.3d at 637. The phrase "Graham Crackers," in contrast, does not even use the word "grain," much less state anything about whole grain.

Third, the *Campbell* court misread *Mantikas* as holding that a representation of any ingredient implies that the ingredient is ***predominant*** rather than simply present. *Campbell*, 516 F. Supp. at 386. This is not what *Mantikas* held, as multiple cases applying *Mantikas* have explained. *See Kennedy*, 2020 WL 4006197, at *11; *Harris v. Mondelez Glob. LLC*, 2020 WL 4336390, at *2-3 (E.D.N.Y. July 28, 2020). Indeed, *Mantikas* itself distinguished cases like this one, where the plaintiff alleges she was misled to believe "the product contained a significant quantity of a particular ingredient." 910 F.3d at

---

[1] Merriam-Webster's Dictionary, *Graham Flour*, https://www.merriam-webster.com/dictionary/graham%20flour (referring to "Sylvester Graham, 1851 American dietary reformer").

637-38 (citing cases). Valcarcel's Opposition fails to address this distinction embedded in *Mantikas* itself and fails to address the many cases Ahold cited distinguishing *Mantikas* when the label did not make an express claim about the amount or source of a particular ingredient.[2] (Mem. 14-15).

Valcarcel also cites *Watson v. Kellogg Sales Co.*, 2019 WL 10734829 (S.D.N.Y. Oct. 29, 2019), in which the court dismissed challenges to "honey" statements but allowed challenges to "graham" statements to proceed. This brief oral decision contains minimal analysis, does not explain the distinction between honey and graham claims, and does not explain how the court applied *Mantikas* to the facts. That decision is not persuasive, and the Court should not follow it.

## III.   Valcarcel's Conclusory Allegations of a Price Premium Fail to Sufficiently Plead Injury Under the GBL.

Valcarcel's GBL claims fail for the additional reason that Valcarcel failed to adequately allege an injury. Contrary to Valcarcel's argument, the cases cited in Ahold's motion are not "outliers." (Opp. 10). Another court reviewing claims brought by Valcarcel's counsel concluded that the substantially identical allegation of a price premium did not "support a plausible economic injury."  *Harris v. McDonald's Corp.*, 2021 WL 2172833, at *2 (N.D. Cal. Mar. 24, 2021). Nor are Ahold's cases distinguishable. Like the plaintiff in *Colella v. Atkins Nutritionals, Inc.*, Valcarcel "provides no facts regarding what the premium was" or "the price of non-premium products." 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018). Similarly, in *Izquierdo v. Mondelez International Inc.*, the plaintiff alleged that he purchased candy for a "premium price of $4.29 (or more)" and provided examples of candy sold at lower prices but failed to plausibly allege that the price was "inflated" by the "allegedly misleading

---

[2] *See Wynn v. Topco Assocs., LLC*, 2021 WL 168541, at *4 (S.D.N.Y. Jan. 19, 2021) ("vanilla" did not make "explicit claims about the ingredients constituting the flavor"); *Winston v. Hershey Co.*, 2020 WL 8025385, at *4 (E.D.N.Y. Oct. 26, 2020) ("Reese's White" did not make a claim about white chocolate); *Steele v. Wegmans Food Markets, Inc.*, 472 F. Supp. 3d 47, 50 (S.D.N.Y. 2020) ("vanilla" did not make a claim about vanilla beans or bean extract).

packaging." 2016 WL 6459832, at *1, 7 (S.D.N.Y. Oct. 26, 2016). Valcarcel has done even less here, as she has not identified the price of supposedly non-premium products.

In contrast, the cases Valcarcel cites are readily distinguishable. For example, in *Greene v. Gerber Products Co.*, 262 F. Supp. 3d 38, 68 (E.D.N.Y. 2017), the plaintiff identified an infant formula that did not make the at-issue allergy claims priced at a 41% discount compared to the challenged product. Valcarcel's Complaint does not even approach this level of factual detail.

## IV.    Valcarcel's Common Law Claims Fail as a Matter of Law for Additional Reasons.

**Negligent misrepresentation**. Valcarcel concedes that this claim requires a "special relationship," but claims she satisfied this requirement by alleging that Ahold is a "supermarket with an established reputation for quality." (Opp. 14-15 (quoting Compl. ¶ 52)). Not so. As Ahold explained in its opening brief, a special relationship requires more than the defendant's mere "knowledge of the particulars of its business." (Mem. 19-20). Valcarcel failed to respond and thus waived this issue.

Valcarcel also claims that the existence of a special relationship cannot be decided on a Rule 12 motion. (Opp. 15). This, too, is incorrect, as shown by the cases cited in Ahold's brief. (Mem. 19). Even the case Valcarcel cites, *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87 (2d Cir. 2001), does not support her position. *Suez* held that a complaint adequately alleged a special relationship where the defendants "initiated contact with plaintiff" and "induced them to forebear from performing their own due diligence." *Id.* at 103. The court, however, dismissed the claim as to other defendants about whom the plaintiff made only "conclusory allegations." *Id.* at 104. Valcarcel's allegations here are conclusory, and dismissal is warranted.

Lastly, Valcarcel admits that the Product's primary flour ingredient is public information available on the ingredient list but argues that does not defeat a negligent misrepresentation claim. (Opp. 15). Again, the case she cites does not support this proposition. In *Greene*, the plaintiffs alleged that the defendant advertised its infant formula as capable of reducing the risk of allergies,

yet possessed non-public information that "undermined the scientific support for its representations." 262 F. Supp. 3d at 48-49, 74, 76. Valcarcel has not alleged anything remotely similar here, since the Product's ingredient list is readily accessible to all.

**Warranty**. Valcarcel concedes she did not provide pre-suit notice but argues such notice was not required. Incorrect. First, she argues that her Complaint itself provides sufficient notice. (Opp. 12). To the contrary, "timely notice is a condition *precedent* to bringing an action for breach of warranty." *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 244-45 (S.D.N.Y. 2020) (quotation omitted). Second, Valcarcel argues that there is an exception to the notice requirement for retail sales. (Opp. 12). Only a minority of courts have recognized this exception, and only in cases where the plaintiff was ***physically injured*** by the defendant's products. *See Colella*, 348 F. Supp. 3d at 143-44; *Bassaw v. United Indus. Corp.*, 482 F. Supp. 3d 80, 86 n.3 (S.D.N.Y. Aug. 31, 2020). Valcarcel has not alleged anything of the sort here.

Valcarcel argues that she adequately pleaded an implied warranty claim because she alleged that the Product "did not conform to its affirmations of fact" and was "not fit to pass in the trade as advertised," citing no case law in support. (Opp. 13; Compl. ¶ 78). These allegations fail to establish that the Product was not "of merchantable quality" and thus fail to state a claim. *Niles v. Beverage Mktg. USA, Inc.*, 2020 WL 4587753, at *7 (E.D.N.Y. Apr. 16, 2020).

Valcarcel concedes that the MMWA applies only to written affirmations that a product "is defect free or will meet a specified level of performance over a specified period of time." 15 U.S.C. § 2301(6)(A). Valcarcel fails to explain how the statement "Graham Crackers" meets this definition and fails to address the cases cited by Ahold holding that such product descriptions fall outside the MMWA's ambit. (*Compare* Mem. 21-22, *with* Opp. 13-14). The one case Valcarcel cites is plainly distinguishable, as it involved an insect repellent that instructed consumers to apply

every 3-4 hours. (Opp. 14). Valcarcel also argues that she need not meet MWWA's jurisdictional requirements, because she is relying on the Class Action Fairness Act ("CAFA") for federal jurisdiction. (*Id.*) Multiple courts, however, have held that "CAFA may not be used to evade or override the MMWA's specific numerosity requirement" of 100 named plaintiffs. *Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1035 (9th Cir. 2020); *see also Ebin v. Kangadis Food Inc.*, 2013 WL 3936193, at *1 (S.D.N.Y. July 26, 2013) (Rakoff, J.).

**Fraud**. Valcarcel fails to respond to Ahold's argument that she failed to "allege facts that give rise to a strong inference of fraudulent intent." (Mem. 22). She has therefore waived any response, *see Syron*, 934 F. Supp. 2d at 631, and her fraud claim should be dismissed.

**Unjust Enrichment**. Valcarcel argues that unjust enrichment can be pleaded in the alternative (Opp. 15-16), but this argument fails because she did not plead unjust enrichment in the alternative. (*See* Compl. ¶ 87); *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 307 (7th Cir. 2018) (dismissing a duplicative unjust enrichment claim under New York law not pleaded in the alternative). In any event, such alternative pleading "will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017). Valcarcel does not explain how her unjust enrichment claim is not duplicative, so her claim should be dismissed.

## V.     Valcarcel Lacks Standing to Seek Injunctive Relief.

Valcarcel argues that *Berni v. Barilla S.p.A.*, 964 F.3d 141 (2d Cir. 2020) does not apply because that case addressed a class certification motion, not a motion to dismiss. But the *Berni* court's conclusion that past purchasers of consumer products "are not likely to encounter future harm of the kind that makes injunctive relief appropriate," *id.* at 147, was not limited to class certification, and courts in the Second Circuit "have uniformly applied *Berni* in the context of motions to dismiss directed at the named plaintiff's individual claims," *Quintanilla v. WW Int'l,*

*Inc.*, 2021 WL 2077935, at *5 n.3 (S.D.N.Y. May 24, 2021) (quotation omitted) (citing cases). This includes the cases cited in Ahold's brief, which Valcarcel ignores. (Mem. 24-25).[3]

## VI.     Valcarcel's Complaint Should Be Dismissed with Prejudice.

Valcarcel asks for leave to amend her Complaint if the Court grants Ahold's Motion to Dismiss but fails to state what she would add or change. (Opp. 17). The Court has discretion to deny amendment "when leave is requested informally in a brief filed in opposition to a motion to dismiss." *In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 220 (2d Cir. 2006), *abrogated on other grounds by F.T.C. v. Actavis, Inc.*, 570 U.S. 136 (2013). Moreover, Valcarcel has "failed to set forth any additional facts indicating how the pleading deficiencies would be cured," making any amendment futile. *Berman v. Morgan Keegan & Co.*, 2011 WL 1002683, at *15 (S.D.N.Y. Mar. 14, 2011), *aff'd*, 455 F. App'x 92 (2d Cir. 2012). The Court should therefore dismiss with prejudice. (Mem. 25).

## CONCLUSION

Ahold respectfully requests that the Court dismiss the Complaint with prejudice.

Dated:  December 6, 2021

<u>*s/ Tyler A. Young*</u>
FAEGRE DRINKER BIDDLE & REATH LLP
Sarah L. Brew (admitted *pro hac vice*)
Tyler A. Young (admitted *pro hac vice*)
Rory F. Collins (NY Bar No. 5549670)
Emily R. Zambrana (admitted *pro hac vice*)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Telephone: (612) 766-7000
Fax: (612) 766-1600
sarah.brew@faegredrinker.com

---

[3] *Berni* also explicitly rejected the cases on which Valcarcel's Opposition relies. (Opp. 16-17). *See Berni*, 964 F.3d at 148 & n. 32 (rejecting *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 67 (E.D.N.Y. 2015)); *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 317 F.R.D. 374, 397 (S.D.N.Y. 2016) (relying on *Belfiore*).

tyler.young@faegredrinker.com
rory.collins@faegredrinker.com
emily.zambrana@faegredrinker.com

*Attorneys for Defendant Ahold U.S.A., Inc.*