UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
IDALIA VALCARCEL,

          Plaintiff,

     -against-

AHOLD U.S.A., Inc.,

          Defendant.
```

21-cv-07821 (JSR)

<u>MEMORANDUM ORDER</u>

JED S. RAKOFF, U.S.D.J.

To paraphrase Justice Holmes, a graham of history is worth a pound of logic.[1]  Rising to prominence in the 1830s, Sylvester Graham believed that a high-fiber, vegetarian diet – particularly when combined with cold baths and hard mattresses – could stave off a whole litany of diseases, from cholera to alcoholism to premature aging.[2]  But his most famous recommendation was that a thick, homemade bread, made from the whole of the wheat and coarsely ground, should be the mainstay of every American's diet.  Indeed, it has been said that his

---

[1] <u>New York Tr. Co. v. Eisner</u>, 256 U.S. 345, 349 (1921) ("[A] page of history is worth a volume of logic.")

[2] Marjolijn Bijlefeld & Sharon K. Zoumbaris, <u>Encyclopedia of Diet Fads: Understanding Science and Society</u> 97 (2d. Ed., 2014).

harsh condemnation of commercial white bread once incited the bakers of Boston to riot.[3]

Somewhat more recently, in January or February of 2021, Plaintiff Idalia Valcarcel purchased at her local Stop and Shop supermarket a box of crackers, labeled on its face with the word "GRAHAM" in large, all capital letters, expecting that they would be made predominantly with graham – that is, whole wheat – flour. But they were not. As a result, Valcarcel brings this suit against Stop and Shop's parent company, Defendant Ahold U.S.A., Inc. ("Ahold"), which manufacturers, labels, markets, and sells the product in question, alleging that she was deceived by the product's packaging.

In her complaint, Valcarcel seeks monetary and injunctive relief on behalf of herself and a putative class of consumers, alleging a number of legal theories, including violations of New York State consumer protection laws, fraud, negligent misrepresentation, breach of express and implied warranties, unjust enrichment, and breach of the Magnuson Moss Warranty Act, 15 U.S.C. § 2301, et seq.[4]  Ahold moves to dismiss the complaint

---

[3] Id. at 98-99.

[4] Valcarcel brings this suit based on diversity jurisdiction under the Class Action Fairness Act.  See 28 U.S.C. § 1332(d)(2). Valcarcel is a citizen of New York, and Ahold is a Maryland corporation.  ¶¶ 38-39.  Given the size of the putative class, the amount in controversy is alleged to be over $5 million.  ¶ 37.

in its entirety for failure to state a claim.  For the reasons that follows, the Court holds that Valcarcel's consumer protection claims have been adequately pleaded, but that her other claims fail.  Additionally, the Court holds that she lacks standing to seek injunctive relief.  Accordingly, Ahold's motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

Ahold "manufactures, labels, markets, and sells cinnamon flavored crackers . . .  under its Stop and Shop brand" that are described as "graham crackers" on the front label.  ¶¶ 1-2.[5]  These crackers are sold both in-store and online by the Stop and Shop chain of supermarkets, which Ahold owns and operates.  ¶¶ 46-49.  The packaging described the product as "Naturally Flavored Cinnamon Graham Crackers," with "GRAHAM" appearing in all capital letters and as the largest word on the label.  ¶ 2-3.  Pictured on the label is an image of "dark hued crackers" and "a seal promising '100% Quality & Trust Guarantee.'"  ¶ 2.  The front of the cracker box is pictured below.

---

[5] Citations to ¶ __ are to Plaintiff's complaint, ECF No. 1.



¶ 1.  As the image shows, the word "graham" appears both larger and in a distinct font from the word "crackers," which appears under it.

Valcarcel alleges that the product's name and the emphasis on the word "graham" would lead a reasonable consumer to believe that "graham flour – a type of whole grain flour – is the primary and predominant flour ingredient used." ¶ 4.  Dictionaries, Valcarcel alleges, confirm reasonable consumers' expectations, with one dictionary, for example, defining "graham cracker" as "a semisweet cracker, usually rectangular in shape, made chiefly of whole-wheat flour." ¶ 5 (quoting Graham Cracker, Dictionary.com, https://www.dictionary.com/browse/graham-cracker (last visited 12/21/2021)).  The whole grain content allegedly distinguishes a graham cracker from other crackers and cookies made mostly with

enriched flour, also referred to as "white flour" or "refined flour." ¶ 6.[6]

The box for the product contains an ingredient list, which Valcarcel's complaint reproduces. ¶ 9. The ingredient list indicates that the crackers contain more "Enriched Wheat Flour" than "Graham Flour (Whole Grain Wheat Flour)":

> **Ingredients:** Enriched Wheat Flour (Wheat Flour, Niacin, Reduced Iron, Thiamin Mononitrate, Riboflavin, Folic Acid), Graham Flour (Whole Grain Wheat Flour), Sugar, High Oleic Canola And/or Soybean Oil With TBHQ And Citric Acid to Preserve Freshness, Contains 2% Or Less Of: Molasses, Honey, Leavening (Baking Soda, Calcium Phosphate), Salt, Dextrose, Cinnamon, Soy Lecithin, Natural Cinnamon Flavor, Sodium Sulfite.

¶ 9. The ingredient list thus reveals that "Enriched Wheat Flour" is the predominant flour – not graham flour, as, the complaint alleges, a reasonable consumer would expect in light of the packaging. ¶¶ 8-9. The complaint alleges further that based on the Nutrition Facts appearing on the packaging, the amount of whole grain wheat flour in the crackers is approximately twenty-five percent of the amount of refined flour. ¶¶ 17-19.[7] This, according

---

[6] According the complaint, in whole grain flour all three parts of the grain are used, as opposed to enriched flour, which only uses the endosperm. ¶ 7.

[7] Allegedly, the misleading impression left by the packaging is compounded by the darker color of the crackers, which – though caused by the use of honey as a sweetener – causes the product to be darker than would otherwise be expected of a cracker containing the ratio of refined white flour to whole grain graham flour present here. ¶¶ 20-24.

to the complaint, renders the product misbranded under the Food, Drug, and Cosmetic Act, 21 U.S.C. § 343(a)(1).  ¶¶ 25-30.

The complaint further alleges that surveys show that consumers care if the products they buy are made with whole grains, "because [such products] contain more fiber than refined white flour."  ¶¶ 10-11.  The complaint also alleges that the emphasis in the packaging on the word "GRAHAM" highlights the presence of fiber, a nutrient associated with whole grains, even though the product is not actually a good source of fiber.  ¶¶ 16-19. Allegedly, the product is sold at a premium price compared to other similar products – no less than $2.99 per 14.4 oz – a higher price than it would have otherwise sold for absent the misleading packaging.  ¶ 35.

Valcarcel alleges that she has purchased Ahold's crackers on one or more occasions from a Stop and Shop location in the Bronx, New York at a price of equal to or greater than $2.99.  ¶ 49.  She viewed the supermarket as having an "established reputation for quality," as promised by the seal on the front label of the packaging.  ¶ 52. And she bought the product because she expected that it would contain a predominant amount of whole grain graham flour.  ¶ 50-51.  She would not have purchased the product if she knew the representations were false and misleading.  ¶ 55.  She intends to buy the crackers again "when she can do so with the

assurance that [the product's] representations are consistent with its composition." ¶ 58.

On September 18, 2021, Valcarcel filed suit against Ahold asserting claims for violations of Sections 349 and 350 of the New York General Business Law ("GBL"), breach of express warranty, breach of the implied warranty of merchantability, violation of the Magnuson Moss Warranty Act, 15 U.S.C. § 2301, <u>et seq.</u>, negligent misrepresentation, fraud, and unjust enrichment. The complaint also asserts claims on behalf of a putative class of "[a]ll persons in the State of New York who purchased the Product during the statutes of limitation for each cause of action alleged." ¶ 59. The complaint seeks both damages and injunctive relief. Ahold filed the present motion to dismiss the complaint its entirety on November 11, 2021. ECF No. 15.

### LEGAL STANDARD

On a 12(b)(6) motion to dismiss, a court must "accept[] all of the complaint's factual allegations as true and draw[] all reasonable inferences in the plaintiffs' favor." <u>Giunta v. Dingman</u>, 893 F.3d 73, 78–79 (2d Cir. 2018).[8] "Although allegations that are 'conclusory' are 'not entitled to be assumed true,' '[w]hen there are well-pleaded factual allegations, a court should

---

[8] Unless otherwise indicated, in quoting cases all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Lynch v. City of New York, 952 F.3d 67, 75 (2d Cir. 2020) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

## Discussion

I.   The Court Cannot Conclude Valcarcel's Claims are Preempted by Federal Law Given the Current Procedural Posture.

Ahold argues that Valcarcel's claims, including her GBL claims, are preempted by the federal Food, Drug, and Cosmetic Act ("FDCA").   The FDCA prohibits the "misbranding" of food in interstate commerce.   21 U.S.C. § 331.   In particular, one provision of the Act, 21 U.S.C. § 343, identifies twenty-three grounds for which a food "shall be deemed misbranded."   This includes a catch-all deeming all products misbranded if "its labeling is false or misleading in any particular," id. § 343(a)(1), as well as more specific grounds.  Relevant here is § 343(i), which provides that a good is misbranded if the label does

not bear "the common or usual name of the food, if any there be."
Id. § 343(i).  The U.S. Food and Drug Administration ("FDA") has
promulgated regulations establishing "general principles" for the
"common or usual name of a food," among them that "[t]he name shall
be uniform among all identical or similar products" and that the
name "may be established [either] by common usage" or regulation.
21 C.F.R. § 102.5(a), (d).

The FDCA, as amended by the Nutrition Labeling and Education
Act of 1990, explicitly preempts state laws to the extent they
differ from applicable federal labeling laws.  Specifically, as
implicated here, § 343-1(a)(3) provides that "no State ... may .
. . establish . . . any requirement for the labeling of food" that
is: (1) "of the type required by . . . [21 U.S.C. §] 343(i)(1)";
and (2) "not identical to the requirement of such section."  21
U.S.C. § 343-1(a)(3).  Thus, any state requirement "of the [same]
type" as the requirement that the good be labeled with the "common
or usual name" is preempted to the extent it requires something
different.  Id. § 343(a)(1).[9]

---

[9] At least some courts have held that a complaint asserting state
law claims based on allegedly misleading food packaging can only
survive a preemption challenge if the packaging, as alleged, also
violates the FDCA.  See, e.g., Lima v. Post Consumer Brands, LLC,
2019 WL 3802885, at *4 (D. Mass. Aug. 13, 2019).  This is based on
the idea that the FDCA preempts any state law claims premised on
packaging that is fully compliant with state law but does not
preempt state laws to the extent they merely impose different or
additional remedies beyond those provided by the federal statute.
Id.  Apparently in contemplation of such an argument, Valcarcel's

Relying on these provisions, Ahold argues that Valcarcel's claims are preempted insofar as they are premised on the theory that compliance with state law requires labeling the crackers in question in some manner other than as "graham crackers," which Ahold argues is the "common and usual name," as established by "common usage," of crackers such as these.  According to Ahold, "products like Defendant's Product – a flat, rectangular, perforated, sweet, crunchy cracker – have been sold under the common, usual name 'graham crackers' for decades."  ECF No. 16 at 15.[10]  In support of this position, Ahold relies on the Central District of California's decision in <u>Painter v. Blue Diamond Growers</u>, 2017 WL 4766510, at *2 (C.D. Cal. May 24, 2017), <u>aff'd</u>, 757 F. App'x 517 (9th Cir. 2018), which held that "Almond milk"

---

complaint alleges that the violations underlying its state law claim also constitute violations of federal law.  <u>See</u> ¶¶ 25-30.  Ahold did not raise such a preemption argument in connection to its motion to dismiss – instead raising the narrower argument addressed here – and, as such, the Court does not address this alternative, broader preemption theory.

[10] As evidence for this proposition, Ahold cites the United States Department of Agriculture's Commercial Item Description for graham crackers, which requires graham crackers to contain graham flour and sugar but does not require any particular amount or proportion of those ingredients.  ECF No. 17-2 at 6.  Although the Court can, on motion to dismiss, consider publicly available documents, such consideration is limited to "what the documents state" and "not to prove the truth of their contents."  <u>Roth v. Jennings</u>, 489 F.3d 499, 509 (2d Cir. 2007).  In other words, the Court cannot – given the current posture – rely on the cited document to conclude that "graham cracker" is understood to refer to any cracker containing some amount of graham flour.

was not a deceptive label because it was found by the court to be consistent with the "common or usual name" regulations set out in 21 C.F.R. § 102.5(a).

"At the pleading stage, preemption constitutes grounds for dismissal only 'if the statute's barrier to suit is evident from the face of the complaint.'" K.D. Hercules, Inc. v. Laborers Loc. 78 of Laborers' Int'l Union of N. Am., 2021 WL 1614369, at *2 (S.D.N.Y. Apr. 26, 2021) (quoting Ricci v. Teamsters Union Local 456, 781 F.3d 25, 28 (2d Cir. 2015)).   Ahold's argument for preemption, however, rests on factual assertions regarding the "common usage" of the term "graham cracker" that go beyond the allegations of the complaint.   Indeed, while it may be possible in some cases to ascertain how a term is commonly used on a motion to dismiss, Ahold's argument here invites the Court to define a "graham cracker" in terms of its shape and taste on the basis of what would essentially be speculation.   This it cannot do.[11]

---

[11] To the extent the district court's decision in Painter suggests a different result, that decision is unpersuasive.   In Painter, the district court relied on the prior decision in Ang v. Whitewave Foods Co., 2013 WL 6492353, at *3 (N.D. Cal. Dec. 10, 2013), holding that "soymilk," "almond milk," and "coconut milk" are appropriate "common or usual name[s]" because, in the court's view, they "accurately describe[d] [the defendants'] products." However, in the absence of an FDA-promulgated regulation on the subject, the "common or usual name" is defined by "common usage," not the court's own judgment as to whether a term is accurate.   21 C.F.R. § 102.5(d).   Notably, in affirming the district court's decision in Painter case, the Ninth Circuit relied on an alternative ground based on a specific FDCA regulation governing

Accordingly, the Court cannot conclude, given the current posture, that Valcarcel's claims are preempted by federal law.

## II. Valcarcel Has Adequately Pleaded a Violation of New York General Business Law §§ 349 and 350

Ahold next argues that even if Valcarcel's claims were not preempted, they fail on the merits.  GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service."  GBL § 350, relatedly, prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service."  "To successfully assert a claim under either section, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'"  Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015) (quoting Koch v. Acker, Merrall & Condit Co., 967 N.E.2d 675, 675-67 (N.Y. 2012)).

Ahold argues that Valcarcel's GBL claims fail on two of these three elements: (1) failure to plausibly allege that the product made materially misleading statements and (2) failure to adequately plead injury.  Each is addressed in turn.  As described

---

"imitation" products.  See Painter v. Blue Diamond Growers, 757 F. App'x 517, 518 (9th Cir. 2018).

below, the Court concludes that neither provides a basis for dismissing the GBL claims at this stage in the proceedings.

      A. Materially Misleading Statements

    "To state a claim for false advertising or deceptive business practices under New York . . . law, a plaintiff must plausibly allege that the deceptive conduct was 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" Mantikas v. Kellogg Co., 910 F.3d 633, 636 (2d Cir. 2018) (quoting Fink v. Time Warner Cable, 714 F.3d 739, 741 (2d Cir. 2013)). "The test applies an objective standard." Campbell v. Whole Foods Mkt. Grp., Inc., 516 F. Supp. 3d 370, 381 (S.D.N.Y. 2021) (citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 647 N.E.2d 741 (1995)).

    "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." Cambell, 516 F. Supp. 3d at 381 (Fink, 714 F.3d at 741). "However, 'this inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage.'" Id. (quoting Duran v. Henkel of Am., Inc., 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020)). That said, "plaintiffs must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers. Instead, [p]laintiffs must plausibly allege that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could

be misled." <u>Lugones v. Pete & Gerry's Organic, LLC</u>, 440 F. Supp. 3d 226, 242 (S.D.N.Y. 2020).

Here, Valcarcel alleges that that the packaging for Ahold's crackers is materially misleading because "[t]he Product's name, and the emphasis on the word 'Graham,' gives reasonable consumers the impression that graham flour – a type of whole grain flour – is the primary and predominant flour ingredient used." ¶ 4. These allegations are essentially identical to those held to survive motion to dismiss in another case recently decided in this District, <u>Cambell</u>. <u>See</u> 516. F. Supp. 3d 370.

In <u>Campbell</u>, a customer brought a putative class action complaint asserting violations of GBL §§ 349 and 350 after purchasing Whole Foods brand "Honey Graham Crackers." <u>Id.</u> at 376. There, the packaging on the box of crackers featured the words "Honey Graham" in large letters with "Crackers" written in a smaller font below. <u>Id.</u> at 378. As in the present case, the plaintiff in <u>Campbell</u> alleged, in relevant part, that this packaging would lead a reasonable consumer to "think[] that the product contains more whole grain – or graham – flour than refined flour." <u>Id.</u> at 382. The district court agreed, holding that, "assuming [the reasonable consumer] knows what graham means," such a customer "would read the reference on the packaging to Graham to be a reference to 'whole wheat'" and conclude "that the grain in the product is predominantly, if not entirely, <u>whole</u> grain," even

14

though a "customer could determine from the ingredient label that refined flour was the principal ingredient." Id. at 383.

The Campbell decision followed from the Second Circuit ruling in Mantikas, which involved boxes of Cheez-It crackers sold in packaging labeled either "WHOLE GRAIN" or "MADE WITH WHOLE GRAIN" in large print.  910 F.3d at 364.  Plaintiffs in that case brought claims for deceptive business practices under New York and California law, alleging that they purchased one or both of the "WHOLE GRAIN" versions of the Cheez-Its "believing on the basis of that label that the grain content was predominantly whole grain" when, in fact, the product contained more enriched white flour than whole grain flour. Id. at 635. The district court dismissed the claims on the grounds that both statements were literally true and were qualified by other language on the packaging detailing the number of grams of whole grain per serving. Id. at 636.  On appeal, the Second Circuit reversed, explaining that "reasonable consumers are likely to understand that crackers are typically made predominantly of grain" and would "look to the bold assertions on the packaging to discern what type of grain." Id. at 638. Further, the court held that "disclosures on the side of the box," in the form of the ingredients list, did not "render Plaintiffs' allegations of deception implausible," explaining that "reasonable consumers should not be expected to consult the Nutrition Facts

panel on the side of the box to correct misleading information set forth in large bold type on the front of the box." Id. at 638.

The Campbell court found the Mantikas opinion to be directly on point, with the words "WHOLE GRAIN" replaced with "graham," a word that – the plaintiff there alleged – would be understood by the reasonable consumer to mean the same thing. 516. F. Supp. 3d at 382-83. Valcarcel argues that the same conclusion is appropriate here. Like the packaging in Campbell, the packaging at issue here features the word "GRAHAM" in larger, bolder text above the word "crackers." Assuming that a reasonable consumer understands that "graham" is another name for whole wheat flour – a not unreasonable assumption at this stage given the dictionary definitions of both "graham" and "graham crackers," respectively – Mantikas dictated the answer in Campbell and, Valcarcel argues, does the same here.

In its motion to dismiss, Ahold attempts to distinguish the holding in Campbell, noting that the packaging at issue in that case featured the words "Honey" and "Graham" in the same size, font and color. Id. at 383. The Campbell court noted that the equivalency between "Graham" and "Honey" would indicate to a reasonable consumer knowledgeable of graham flour that both graham and honey are ingredients. Id. In contrast, here, Ahold argues that the packaging "plainly conveys" that the product is "Graham Crackers" and the flavor is "Cinnamon." ECF No. 1 at 12 n.7.

16

Ahold is correct that, in contrast to packaging at issue in
Campbell, the flavoring, "cinnamon," is differentiated from the
word "graham," as it appears smaller and in a different font.
However, more importantly, like in Campbell, there is a marked
visual contrast between the words "crackers" and "graham" that
emphasizes the latter word.  It is this emphasis on the word
indicative of a particular kind of flour that renders the packaging
deceptive under Mantikas – at least so long as one assumes, as the
Court must at this stage given the complaint's allegations, that
the reasonable consumer is familiar with graham flour.

In the alternative, Ahold argues that Campbell wrongly
applied Mantikas and instead urges the Court to follow the
recommendation of the magistrate judge in Kennedy v. Mondelez Glob.
LLC., 2020 WL 4006197 (E.D.N.Y. July 10, 2020).  In that case, the
plaintiffs similarly brought class action claims alleging that
products labeled as "grahams" were misleading because they
contained predominantly white flour, and not graham flour, as the
name allegedly indicated.  Id. at *1. The magistrate judge
recommended dismissing the allegations as implausible, stating
that "[a] reasonable consumer hearing the term 'graham' . . .
thinks first and foremost of a slightly sweet, darker-colored,
rectangular, and perforated cracker" – that is the "type of cracker
that is used in desserts like s'mores" – and not a type of flour.
Id. at *9.  Citing the decision in Kennedy, Ahold argues that the

present facts are distinct from <u>Mantikas</u> because "graham crackers," as the words appear on the packaging of its product, would not be understood to indicate a particular kind of flour. Ahold points to certain dictionary definitions as vindicating this understanding.   <u>See</u> "Graham Cracker," <u>Cambridge Dictionary</u>, https://dictionary.cambridge.org/us/dictionary/english/graham-cracker ("a flat, thin, hard, rectangular or square cookie, usually flavored with honey or cinnamon").

However, as the <u>Campbell</u> court explained, the magistrate judge in <u>Kennedy</u> erred in substituting its own understanding of what "reasonable consumers" interpret "graham crackers" to mean:

> The Court understands the motivating force behind this decision: when reading the phrase "graham cracker," this Court too does not think of whole wheat flour — or, frankly, anything particularly healthy. In fact, before reading the complaint in this case, this judge did not know that the "graham" in graham cracker referred to a type of flour . . . . But in evaluating the allegations here, the Court cannot assume that consumers will be equally ignorant of the clear-cut meaning of the term "graham."

516 F. Supp. 3d at 383-84.  At the motion to dismiss stage, "the Court may not resolve questions regarding 'the background knowledge, experience, and understanding of reasonable consumers' as a matter of law."  <u>Cooper v. Anheuser-Busch, LLC</u>, 2021 WL 3501203, at *11 (S.D.N.Y. Aug. 9, 2021) (quoting <u>Stoltz v. Fage Dairy Processing Indus., S.A.</u>, 2015 WL 5579872, at *14 (E.D.N.Y. Sept. 22, 2015)).  It may well be that "survey, expert testimony,

and other [competent] evidence" ultimately proves Ahold's position to be the correct one, id., but such factual inquiry and inference is improper given the present procedural posture.

    B. Injury

To satisfy the injury element of a claim under GBL §§ 349 or 350, "a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." Orlander v. Staples, Inc., 802 F.3d 289, 302 (2d Cir. 2015). "One way to do so is to allege that the plaintiff would not have purchased the product or been willing to pay as much had they known the true facts." Campbell, 516 F. Supp. 3d at 388. Indeed, as the Second Circuit has explained, it is sufficient to allege "that the price of the product was inflated as a result of defendants deceptions [to] meet[] the injury requirement." Axon v. Florida's Nat. Growers, Inc., 813 F. App'x 701, 704 (2d Cir. 2020). That is what Valcarcel has done, alleging that she bought the product at a price "at or exceeding" $2.99 and "she would not have paid as much [as she did] absent Defendant's false and misleading statements and omissions." ¶¶ 35, 53, 57.

Ahold argues that such "conclusory" allegations regarding the price premium are inadequate because Valcarcel failed to state "what the premium was" or "the price of the non-premium products." Colella v. Atkins Nutritionals, Inc., 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018). While there are cases suggesting that such facts

must be pleaded, that position was explicitly rejected by the Second Circuit, which stated that a plaintiff's "failure to identify the prices of competing products to establish the premium that she paid is not fatal to her claim" at the motion to dismiss stage. Axon, 813 F. App'x at 704. Accordingly, Valcarcel has adequately pled injury resulting from the alleged GBL violations.

Having concluded that Valcarcel has adequately pled violations of GBL §§ 349 and 350, the Court denies Ahold's motion to dismiss those claims.

### III. Valcarcel's Other Common Law Claims Fail as Matter of Law

In addition to the claims under the GBL, Valcarcel asserts a number of state common law claims (and one derivative federal statutory claim), all premised on the allegedly deceptive packaging. For reasons set out below, the Court grants the motion to dismiss as to all of these claims.

#### A. Fraud

"To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC, 783 F.3d 395, 402-03 (2d Cir. 2015). "A claim for common law fraud is subject to the particularity requirements of Federal Rule of Civil

Procedure 9(b)."   Id. at 402-03.   Rule 9(b) requires that the complaint "state with particularity the circumstances constituting fraud."   Fed. R. Civ. P. 9(b).

"Rule 9(b) permits scienter to be averred generally, but '[the Second Circuit] ha[s] repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent.'"   United States ex rel. Tessler v. City of New York, 712 F. App'x 27, 29 (2d Cir. 2017) (quoting O'Brien v. Nat'l Prop. Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991)).   "Such a 'strong inference' can be established either '(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'"   Duran v. Henkel of Am., Inc., 450 F. Supp. 3d 337, 353 (S.D.N.Y. 2020) (quoting Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290-91 (2d Cir. 2006)).

Here, Valcarcel does neither.   Indeed, Valcarcel's only allegation going to fraudulent intent is her conclusory allegation that Ahold acted with "knowledge that the Product was not consistent with its representations."   ¶ 86.   "But the simple knowledge that a statement is false" is insufficient to plead a strong inference of fraudulent intent.   Cooper, 2021 WL 3501203, at*19.   Valcarcel does not argue otherwise, and her counsel

properly withdrew this claim at oral argument.  Accordingly, the fraud claim is dismissed.

### B. Negligent Misrepresentation

To recover for negligent misrepresentation in the commercial context, there must be "a special relationship of trust or confidence . . . between the parties." Kimmell v. Schaefer, 675 N.E.2d 450, 454 (N.Y. 1996).  The plaintiff must show that there was "a closer degree of trust between the parties than that of the ordinary buyer and seller." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 788 (2d Cir. 2003).  Only then will "representations made by a seller of goods . . . give rise to a duty to speak with care." Kimmell, 675 N.E.2d at 454.  The New York Court of Appeal's decision in Kimmell "directs courts to examine the following factors to determine whether a special relationship, and a duty to provide correct information, exists: 'whether the person making the representation held or appeared to hold unique or special expertise, whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose.'" Izquierdo v. Mondelez Int'l, Inc., 2016 WL 6459832, at *8 (S.D.N.Y. Oct. 26, 2016) (quoting Kimmell, 675 N.E.2d at 454).

Courts addressing negligent misrepresentation claims in connection to allegedly deceptive product labels have routinely

held that no special relationship exists between a supermarket and an ordinary consumer.  See, e.g., Twohig v. Shop-Rite Supermarkets, Inc., 519 F. Supp. 3d 154, 166 (S.D.N.Y. 2021); Wynn v. Topco Assocs., LLC, 2021 WL 168541, at *6 (S.D.N.Y. Jan. 19, 2021); Campbell, 516 F. Supp. 3d at 389.  In her papers, Valcarcel argues that such a special relationship has been pled here because the complaint states that Ahold operates a "supermarket with an established reputation for quality, as promised through the front label seal," referring to the seal on the front of the product's packaging "promising a '100% Quality & Trust Guarantee.'"  ¶¶ 2, 52.  But Valcarcel cite no support for the notion that a supermarket's generally favorable reputation can render a sale something "more than an arms-length commercial transaction." Stoltz v. Fage Dairy Processing Indus., 2015 WL 5579872, at *24 (E.D.N.Y. Sept. 22, 2015).  And, while courts have recognized that a label "contain[ing] language . . . suggest[ing] some level of medical or scientific backing for its claim" can support a negligent misrepresentation claim in certain instances, Hughes v. Ester C Co., 930 F. Supp. 2d 439, 475 (E.D.N.Y. 2013), the non-specific assertion of a "[q]uality" and "[t]rust" guarantee cannot not plausibly be interpreted as a representation of expertise in this context.  At oral argument, therefore, plaintiff's counsel withdrew this claim.  Accordingly, the Court grants the motion to dismiss the negligent misrepresentation claim.

C. Breach of Warranty

In order to asset a claim for breach of an express or implied warranty under New York law, "a buyer must provide the seller with timely notice of the alleged breach." Quinn v. Walgreen Co., 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) (citing N.Y. U.C.C. § 2-607(3)(a)).   As to notice, Valcarcel alleges only that she "provided or will provide notice to defendant, its agents, representatives, retailers, and their employees." ¶ 76.  Such an "equivocal" allegation of notice "is insufficient to show that the buyer provided timely notice of the alleged breach." Campbell, 516 F. Supp. 3d at 391.  Valcarcel responds by noting that "a minority of New York State cases suggest an exception to the notice requirement in retail sales." Colella v. Atkins Nutritionals, Inc., 348 F. Supp. 3d 120, 143–44 (E.D.N.Y. 2018).  However, "the exception appears to be exclusively applied where a party alleges physical, in addition to economic, injury." Id. (collecting cases).  Valcarcel has not alleged any physical injury, rendering the exception – to the extent one exists – inapplicable.

Valcarcel also argues that the complaint filed in this action itself qualifies as sufficient notice.  Although a New York court, in Panda Capital Corp. v. Kopo Int'l, Inc., 242 A.D.2d 690, 692 (N.Y. 2d Dep't 1997), "suggest[ed] that a plaintiff's pleadings may constitute reasonable notice in certain cases," Tomasino v. Estee Lauder Companies Inc., 44 F. Supp. 3d 251, 262 (E.D.N.Y.

2014), it does not appear that any authority "from either a New York State court or from within this Circuit . . . relies on Panda Capital for such a broad rule," Lugones v. Pete & Gerry's Organic, LLC, 440 F. Supp. 3d 226, 244 (S.D.N.Y. 2020). Instead, courts to address this issue have held that "timely, pre-litigation notice" is "a condition precedent to bringing an action for breach of warranty." Id. (quoting Mid Island LP v. Hess Corp., 983 N.Y.S.2d 204 (Table), 2013 WL 6421281 (Sup. Ct. Dec. 2, 2013)). Because Valcarcel failed to allege pre-suit notice in a non-equivocal manner, the complaint fails to state a claim for breach of warranty under New York law.

Furthermore, because Valcarcel has not stated a breach of warranty claim under New York law, her claim under the Magnuson Moss Warranty Act ("MMWA") fails as well. The MMWA "grants relief to a consumer 'who is damaged by the failure of a . . . warrantor . . . to comply with any obligation . . . under a written warranty.'" Wilbur v. Toyota Motor Sales, U.S.A., Inc., 86 F.3d 23, 26 (2d Cir. 1996) (quoting 15 U.S.C. § 2310(d)(1)). "At its core, however, the MMWA merely incorporates and federalizes state-law breach of warranty claims, including state-law standards for liability and damages." Cosgrove v. Oregon Chai, Inc., 520 F. Supp. 3d 562, 586 (S.D.N.Y. 2021). Thus, "[t]he MMWA creates no additional bases for liability, but allows a consumer to recover damages under existing state law." Id. (quoting Ebin v. Kangadis

Food Inc., 2013 WL 3936193, at *3 n.2 (S.D.N.Y. July 26, 2013)).
And, as such, the claims under the act "stand or fall with the
express and implied warranty claims under state law." Cali v.
Chrysler Grp. LLC, 2011 WL 383952, at *4 (S.D.N.Y. Jan. 18, 2011),
aff'd, 426 F. App'x 38 (2d Cir. 2011).[12]

Therefore, Ahold's motion to dismiss Valcarcel's breach of
warranty claims is granted.

        D. Unjust Enrichment

"To state a claim for unjust enrichment under New York law a
Plaintiff must show that (1) the defendant was enriched; (2) at
the expense of the plaintiff; and (3) that it would be inequitable
to permit the defendant to retain that which is claimed by
Plaintiff." Twohig, 519 F. Supp. 3d at 167. "However, 'unjust
enrichment is not a catchall cause of action to be used when others
fail.'" Campbell, 516 F. Supp. at 394 (quoting Corsello v. Verizon
N.Y., Inc., 967 N.E.2d 1177, 1185 (20120). "An unjust enrichment
claim is not available where it simply duplicates, or replaces, a
conventional contract or tort claim." Corsello, 967 N.E.2d at
1185. Accordingly, an unjust enrichment claim "will not survive
a motion to dismiss where plaintiffs fail to explain how their
unjust enrichment claim is not merely duplicative of their other

---

[12] Because the Court dismisses the MMWA claim in light of its
dependence on the existence of a viable state law breach of
warranty claim, it does not address the additional grounds for
dismissal of this claim raised by Ahold in its motion.

causes of action." <u>Campbell</u>, 516 F. Supp. at 393.  Here, Valcarcel has offered no explanation of how its unjust enrichment claim differs from its other causes of action, "which seek relief from the same conduct." <u>In re Ford Fusion & C-Max Fuel Econ. Litig.</u>, 2015 WL 7018369, at *39 (S.D.N.Y. Nov. 12, 2015).  As such, the motion to dismiss Valcarcel's unjust enrichment claim is granted.

IV.  <u>Valcarcel Lacks Standing to Seek Injunctive Relief</u>

"A plaintiff seeking to represent a class must personally have standing." <u>Nicosia v. Amazon.com, Inc.</u>, 834 F.3d 220, 239 (2d Cir. 2016).  "Plaintiffs lack standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury." <u>Id.</u> (quoting <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 111-12 (1983)).  "The prospective-orientation of the analysis is critical: to maintain an action for injunctive relief, a plaintiff cannot rely on past injury . . . but must show a likelihood that he . . . will be injured in the future." <u>Berni v. Barilla S.p.A.</u>, 964 F.3d 141, 147 (2d Cir. 2020).

Valcarcel argues that she has standing to pursue injunctive relief because she is unable to rely on the accuracy of the product's front label in the future, which causes her to avoid purchasing the product, even though she would otherwise like to do so.  ¶ 14.  However, in <u>Berni</u>, the Second Circuit rejected that such an allegation can support injunctive relief in cases involving past purchasers of consumer products.  <u>See</u> 964 F.3d at 147-48.  As

the Circuit explained, past purchasers who have "been deceived by the product's packaging once" will not again be deceived because the "next time" those purchasers buys the product they "will be doing so with exactly the level of information that they claim they were owed from the beginning," and, as such, cannot identify a likely harm.  Id. at 148.

Valcarcel attempts to distinguish Berni because the ruling was issued in the context of a motion for class certification rather than a motion to dismiss."  But, as other courts to address this issue have held, "the reasoning behind the Circuit's decision in Berni applies equally" to the motion to dismiss context." Campbell, 516 F. Supp. 3d at 398; see also Quintanilla v. WW Int'l, Inc., 2021 WL 2077935, at *5 n.3 (S.D.N.Y. May 24, 2021) ("[C]ourts in this Circuit . . . have uniformly applied Berni in the context of motions to dismiss . . . .").  Therefore, the Court grants Ahold's motion to dismiss Valcarcel's request for injunctive relief on behalf of herself and on behalf of the putative class.

### Conclusion

Ahold's motion to dismiss Valcarcel's claims under Sections 349 and 350 of the GBL is DENIED.  Ahold's motion to dismiss all other claims and her request for injunctive relief is GRANTED WITH PREJUDICE.  The Clerk of the Court is directed to close document number 15 on the docket in this case.

SO ORDERED.

Dated:     New York, NY

           December 22 , 2021          JED S. RAKOFF, U.S.D.J.